Filed May 28, 1891.

---

No. 81.

## THE BOARD OF COMMISSIONERS OF MARSHALL COUNTY *v.* BURKEY, ADMINISTRATOR.

INSANE HOSPITAL.—*Liability of Husband for Expense of Keeping His Wife in Hospital and for Expenses of Inquest.*—The estate of a husband is not liable to reimburse a county for money expended by it in furnishing his insane wife with clothing while confined in the State Hospital for the Insane, nor for the expense of her inquest of insanity and for taking her to such hospital.

From the Marshall Circuit Court.

*H. Corbin*, for appellant.

*O. M. Packard* and *C. F. Drummond*, for appellee.

NEW, C. J.—On the 13th of December, 1888, the appellant filed a claim against the estate of Conrad Zimmerman, deceased. The claim was disallowed by the administrator, appellee, and transferred to the civil docket of the circuit court for trial. There an amended formal complaint was filed based upon the claim.

A demurrer to the complaint for want of sufficient facts

was sustained, and, the appellant declining to further plead, judgment was rendered in favor of the appellee for costs.

The sufficiency of the complaint as a cause of action against the estate of Conrad Zimmerman, deceased, presents the only question for our decision.

The substance of the complaint is that, in the year 1877, Barbara Zimmerman, the wife of said Conrad Zimmerman, upon proper inquest, was declared to be insane, and, upon application made to the hospital for the insane, was admitted as a patient. She remained there, with the exception of three months, from May 20th, 1878, to the time of filing the claim. Her said husband died on the 7th day of December, 1887, leaving an estate worth ten thousand dollars, and during the time of his wife's confinement in the hospital, he failed to supply her with such clothing as is required by the regulations of said institution when patients are admitted into the same. He also failed to provide for or pay the expense of the inquest of insanity, and expense of taking her to the hospital, but all of said expenses, together with the cost of said clothing, were incurred and paid by the appellant as required by law, the total sum so paid being $176.57.

Can the money thus paid out by the appellant be recovered from the said estate?

In our opinion it can not be recovered.

By section 1, of article 9, of the Constitution, it is made the duty of the General Assembly to provide by law for the support of institutions for the education of the deaf, dumb and blind, and for the treatment of the insane.

The Legislature has provided an institution for the treatment of the insane, in which all such persons having a legal residence in the State are entitled to be maintained " at the expense of the State," subject to certain restrictions and limitations in the law mentioned. Section 2842, R. S. 1881.

The taxable costs and expenses incident to the inquest, to be paid to the examining officers, to medical and other wit-

nesses, to the clerk of the circuit court, and to the sheriff for taking patients to the hospital, are all expressly provided for by law, and are required to be paid out of the county treasury of the proper county, upon the certificate of the clerk and the order of the county auditor. Section 2871, R. S. 1881.

It is further made the duty of the clerk to cause an ample supply of suitable clothing to be sent with every patient who may be admitted to the hospital for the insane, substantially according to a requisition, which the superintendent shall send with the acceptance of the patient; and, if such clothing be not otherwise furnished, it is made the duty of the clerk to purchase it, and payment therefor is made out of the county treasury, upon the certificate of the clerk and order of the county auditor. Section 2856, R. S. 1881.

After the patient is admitted into the hospital, if he be not otherwise supplied with clothing, the same is furnished by the superintendent, who makes out an account therefor in each case against the particular county from which the patient was sent, in an amount not exceeding $20 per annum for every such patient, which account is delivered to the treasurer of state, to be by him collected from such county as a debt due the institution. Section 2857, R. S. 1881.

It will be found upon an examination of the statutes relating to the acceptance, maintenance and treatment of insane persons in the hospital for the insane, that no authority is conferred upon the counties to reimburse themselves for expenditures on account of the insane. Nor was there prior to the act of March 11th, 1889, any authority permitting the State to look to the estate of insane patients for reimbursement of the State for the cost of the maintenance of such persons while in the insane hospital. That act is silent as to reimbursement of counties. It provides that if the estate of an insane patient already in the hospital for the insane, or for whose admission thereto application has been made, is, in the judgment of the board of trustees, competent to meet the expenses of the care of such patient, they shall take action

to secure the reimbursement of the State out of such estate for the cost of the maintenance of such patient while in the hospital.    The act expressly empowers the board of trustees to sue on the part of the State for the recovery from the estate of the insane patient said expenses.    Elliott's Supp., section 568.

The enactment of this statute would seem to indicate that, in the opinion of the Legislature, the liability of the estate of the insane patient, and power of the State to sue for and recover the same out of such estate, did not exist independent of positive or statutory law.

The right to the reimbursement named in this statute is not only limited to the State, but is confined to the estate of the insane patient.

Prior to the act of 1889 the whole tenor and spirit of our statutes relating to the insane, seem to have been that their acceptance, maintenance and treatment in the hospital for the insane should be at the expense of the State, subject to the reimbursements already named.

If it had been the intention of the Legislature that the counties should be entitled to reimbursement out of the estates of insane persons, or out of the estates of parents, or deceased husbands, as in the case at bar, it is reasonable to believe that it would have been so provided by law.

The statutes making provision for the education and support of the blind and the deaf and dumb in the State institutions erected and maintained for that purpose, make it the duty of the "parents, guardians or other friends" of the pupils to provide them with clothing at the time of their entrance into the "school," and during their continuance there; and also to defray their travelling expenses to and from the institution, not only at the time of their first entrance and final departure, but at any other time when it shall become necessary for them to leave or return to the "school."    And when suitable clothing and travelling expenses are not supplied, it is made the duty of the superin-

tendent to furnish the same, which becomes a charge against the county from which such pupils were sent, to be paid out of the county treasury to the treasurer of State; and thereafter the county treasurer may, in the name of the county, by suit, collect the amount of such account "from the parents or estate of such pupil." And the law makes like provision when it is deemed necessary to remove the pupil, either temporarily, or on account of ill-health, or the "vacation" of the school, or permanently, "on account of having completed his course of instruction," etc. Sections 2762–2767, R. S. 1881. (Acts of 1865, p. 124.)

Our attention has been called to the fact that section 2762, R. S. 1881, names the hospital for the insane as well as the institutions for the blind, the deaf and dumb.

That can have no controlling influence in the decision of the question we are considering. That section relates more especially to the certificate of a justice of the peace that the persons therein named are legal residents of the county where it is claimed they reside. The title to the act, as found on page 124 of the acts of 1865, embraces "pupils" only. And nothing can be more obvious than that all the sections in said act following the first relate alone and exclusively to persons who are admitted as "pupils" in the institutions provided for the "education" of the blind and the deaf and dumb.

Words and phrases are to be taken in their plain or ordinary and usual sense. Section 1, article 9, of Constitution.

By Webster's International Dictionary, a pupil is defined to be "A youth or scholar of either sex under the care of an instructor or tutor." By the Century Dictionary, a pupil is defined to be "A youth or any person of either sex under the care of an instructor or tutor."

Insane persons are not received into the hospital for the insane as pupils or scholars, to be there educated. They have no "vacation" from "school." A "patient" in the hospital for the insane does not sever his connection with

it " on occount of having completed his course of instruction." .

Nowhere in the statutes relating to the insane are such persons named or styled pupils or scholars. Nor have we been able to find where the hospital. or asylum for the insane is spoken of as a school.

In the act of January 15th, 1852, entitled "An act for the government of the Indiana Hospital for the Insane of Indiana," and from which are taken most of the sections found in the revision of 1881 relating to insane persons, they are uniformly called " patients," and so it is in subsequent statutes. Such persons are treated by the law as mentally diseased or sick, needing the care of a physician to make them whole.

But even if the act of 1865, *supra,* clearly gave to the county treasurer the right to collect by suit reimbursements made by the county to the State, it could not avail the appellant in this action :

*First.* Because this is not a suit by the county treasurer in the name of the county ; and, *Second.* Because the suit is not to collect the account set out in the complaint " from the parents or estate " of Barbara Zimmerman, but is to collect the same from the estate of Conrad Zimmerman, deceased, the husband of said Barbara.

In the case of *Board, etc., v. Hildebrand,* 1 Ind. 555, it was held that the provision made by law for the poor was a charity, and that the commissioners of a county had no authority given to them by law to sue Hildebrand for board and lodging furnished his wife in the poor-house.

The court in that case says that, if the wife was a proper subject to be placed in the poor-house, no person is liable to the county for her support while there ; and, if she was not a proper subject to be placed there, the commissioners could not sue for her maintenance. The opinion closes with the statement that the provision made for the poor of the State was a charity which the public was bound to bestow, and

that no authority was given to the commissioners of a county to sue in such a case.

The case of *Board, etc.,* v. *Schmoke,* 51 Ind. 416, was a suit to recover from the husband for room, board, lodging and care furnished his insane wife in the poor-house at the instance and request of the husband, with a further paragraph of complaint, in which it was alleged that the care so taken of the wife was at the request of the husband, with a special promise and agreement by him to pay for the same. The court held that the action could not be maintained, adhering to the *Hildebrand* case, *supra.*

In the case of *Board, etc.,* v. *Ristine,* 124 Ind. 242, the guardian of John W. Hulett, a person of unsound mind, contracted with the county commissioners to pay three dollars per week for the board and care of his ward in the county asylum for the poor. The ward died leaving an ample estate, and the county board thereupon filed a claim against his estate, in which the agreement with the guardian was pleaded. The court held that there could be no recovery against the ward's estate, that the contract relied on was unauthorized, and that there could be no recovery upon the *quantum meruit,* as upon an implied contract or promise; and remarking further, in that connection, that services which were intended to be gratuitous at the time they were rendered, can not afterwards be used as the basis of an implied promise to pay.

The court further says: " It is a thoroughly settled proposition that where one is received into a charitable institution for support or treatment, the law raises no implied obligation to pay in the absence of a contract. Where an individual is received into an institution established solely for benevolent purposes, the law refers his reception, and the relief administered to him, to motives of charity, unless the charter or by-laws of the society or institution provide that the compensation may and shall be charged. An institution or society, no more than an individual, can assume to be

dispensing charity and at the same time create a pecuniary obligation against one to whose necessities it ministers."

The court dwells at length upon the fact also that the Legislature by not conferring upon the county commissioners the power to sue in such cases, had evidently accepted the decisions in the *Hildebrand* and *Schmoke* cases, *supra,* as correct interpretations of the spirit and purpose of the Constitution and laws.

The charity dispensed by a county at its asylum for the poor is not because of contract, express or implied, to be reimbursed therefor. It is a self-imposed duty, which can not be laid aside or avoided, except by the consent of the same power that imposed the duty—the Legislature. And so, also, as to the expenses incurred by Marshall county and now sought to be recovered. The expenditures named in the complaint were made by the county, solely because required by the law, in the bestowment of the benefits and charities which one of its insane citizens was about to receive, and did receive, in the State asylum or hospital for the insane. The moneys paid out by Marshall county, in this instance, were not only paid out in obedience to the mandate of the law, but it was money which may properly be said to have been, under the law, furnished by the taxpayers of the county for that purpose, Conrad Zimmerman and his estate contributing a part.

The judgment is affirmed, with costs.

Filed May 28, 1891.