### FREDERICK SENFT *vs.* HORACE F. CARPENTER.

The defendant's wife, who had escaped from the Butler Hospital for the Insane, in which she had been placed by her husband, was apprehended on the complaint of her husband and taken before a district court for proceedings under Pub. Laws R. I. cap. 819. The district court released her upon a recognizance being given in accordance with § 2 of cap. 819, which provides that if the court shall adjudge the complaint to be true, "it shall, unless a recognizance satisfactory to the court be then given before it that said person shall not be permitted to go at large until restored to soundness of mind, commit such person by warrant under its hand and seal to the Butler Hospital for the Insane, or to the State Asylum for the Insane, there to be detained until," etc. She was then taken by her sister, the plaintiff's wife, to the plaintiff's house, where she was boarded and taken care of for seventeen weeks. The defendant objected at the time to his wife's going to the plaintiff's house, and notified him that he would not pay her board there, but would pay it at the Butler Hospital. Shortly afterwards the defendant provided a place outside of his own house for his wife to board and be taken care of, and gave notice of the fact. The defendant's wife was an invalid and required much care and attention, and she persistently refused to hold any communication with her husband or to see him, claiming that she was not insane and that her confinement had been wrongful. The plaintiff sued the defendant for the board, nursing and care of his wife, and recovered a verdict.

*Held,* that his wife having given the recognizance as provided in Pub. Laws, cap. 819, § 2, the defendant had no right to insist upon her confinement in the Butler Hospital as a condition for supporting her, and that evidence to show that the Butler Hospital was a proper place for her to be kept in, or to show that she was insane, was immaterial and rightly excluded at the trial.

*Held,* further, that the defendant having refused to support his wife at any other place than the Butler Hospital, he was responsible for her support and care at any suitable place outside of the matrimonial home, selected by her with the permission of her bail in the recognizance.

*Held,* further, that the fact that the defendant subsequently provided a place outside of his own house for his wife to board and be taken care of, and gave notice thereof, did not, in view of the circumstances of the case, relieve him from liability for the board, nursing and care afterwards furnished his wife by the plaintiff at his home.

EXCEPTIONS to the Court of Common Pleas.

*April* 13, 1894. TILLINGHAST, J. This is *assumpsit* to recover for the board, nursing and care of the defendant's wife for the period of seventeen weeks at $20 per week. The jury found for the plaintiff in the sum of $295. The facts in the case, in so far as they are material to the question raised by the bill of exceptions, are as follows, viz: The defendant's wife, who had been confined for several years in the Butler Hospital for the Insane, had escaped from that institution, and on the 16th day of January, 1891, was arrested and brought before the District Court in Providence, upon a complaint by her husband setting forth that she was insane and so furiously mad as to render it dangerous to the peace and safety of the people of the State for her to go at large, whereupon, upon giving satisfactory recognizance under the provisions of chapter 819, Pub. Laws R. I., she was released from arrest. She was thereupon taken by her sister, the plaintiff's wife, to the plaintiff's home, where for a period of seventeen weeks she was provided with board, lodging, nursing and medical attendance, she being during all of that time an invalid and requiring much care and attention. The defendant objected to his wife's going to plaintiff's house, and notified him on said 16th day of January, at the District Court, that he would not pay his wife's board at the plaintiff's house, but would do so at said Butler Hospital for the Insane, but that outside of that institution he would pay nothing for her. The defendant offered testimony to prove that his wife was insane at the time when she was placed in the Butler Hospital, and had continued so ever since; that the reason why he did not take her to his own home was that he did not consider it safe to live with her; that said hospital was a fit and proper place for her to be kept, and that he was ready and willing to support her there. But the court ruled that it was impertinent, in so far as it was offered for the purpose of showing that the defendant had the right to dictate as to the confinement of his wife in the hospital as a condition for her support after bond for her liberty had been given as aforesaid; that having given said recognizance she was entitled to

freedom from incarceration in the Butler Hospital, or the State Asylum for the insane—the places specified in said recognizance. To this, and many other rulings of a similar character, defendant duly excepted. He also excepted to the ruling of the court in not permitting him to testify as to his conversation with Mr. Dorsey while his wife was under his control as bail for her, and as to his being willing to support her, and as to whether he had provided a suitable place for her to live and be taken care of outside of his own home. He also excepted to the ruling of the court in not allowing Dr. Palmer to testify as to whether the Butler Hospital was a proper and the best place for Mrs. Carpenter to be taken care of and attended to. The defendant's wife persistently refused to hold any communication with or even to see him, from the time when he first caused her to be confined in the Butler Hospital, she claiming that she was not insane and therefore that her said confinement was wrongful.

The exceptions to the various rulings of the court for excluding testimony to prove that the Butler Hospital for the Insane was a fit and proper place for the defendant's wife, raise the question as to whether the defendant had the right to have his wife detained in that institution and thereby restrained of her liberty after having given recognizance as aforesaid. We think it is clear that this question must be answered in the negative. Section 2 of said chapter 819 provides as follows: "If the court on such examination shall adjudge such complaint to be true, it shall, unless a recognizance satisfactory to said court be then given before it that said person shall not be permitted to go at large until restored to soundness of mind, commit such person by warrant under its hand and seal to the Butler Hospital for the Insane or to the State Asylum for the insane, there to be detained until, in the judgment of the district court of the district in which he may be detained, he shall, upon inspection and examination, be declared to be restored to soundness of mind, or to be no longer under the necessity of restraint, or until recognizance as aforesaid, satisfactory to said district court of the district in which he is confined, shall be given before it."

The defendant's wife having complied with said provision by giving recognizance satisfactory to the court, was entitled to her liberty so far as the defendant was concerned, and hence he had no right to insist as a condition for his supporting her that she should be returned to the hospital. It was immaterial, then, whether, as a matter of fact she was still insane or whether said hospital was a proper place for her. She had taken the proper legal proceedings to free herself, for the time being at any rate, from said restraint, and the defendant could not debar her from the privilege thereby secured. The responsibility of her subsequent conduct was placed upon Mr. Dorsey, who had the right to control her movements, and whose duty it was to see to it that she be not permitted to go at large until restored to soundness of mind.

The next question raised by the bill of exceptions is whether defendant having refused to support his wife at any other place than said Butler Hospital for the Insane, he can be compelled to support her outside of the matrimonial home. We think this question must be answered in the affirmative. It is clearly the duty of the husband to furnish necessaries for the support and maintenance of his wife according to his station and ability, provided she is not guilty of such misconduct as works a forfeiture of her marital rights. See *Anthony* v. *Phillips*, 17 R. I. 188. And it is not claimed in the case at bar that the defendant's wife had in any manner forfeited said right (see *Gill* v. *Read*, 5 R. I. 343), nor is it claimed that the defendant made any provision for or offered to support her at the matrimonial home; but, on the other hand, it does appear that he had declined to so do.

After being liberated from the hospital, she was without a home and without support, and hence had a right to select for herself, by the permission of her bail, a proper and suitable place to live, upon the credit of her husband and at his expense. See *Seaton* v. *Benedict*, 2 Smith's Lead. Cas. (6th Amer. ed. by Hare & Wallace), 489–504, and note. The charge of the court below upon this branch of the case, which was substantially correct, was as follows: "The husband has a right to dictate what is called 'the matrimonial

home.' He can establish his home where he sees fit, and it is the duty of the wife to live with him in that matrimonial home, and if he establishes a home and provides for his wife there he can dictate where it shall be. Now, gentlemen, if he does not provide that matrimonial home, but requires the wife to live elsewhere,—if he either refuses or neglects to provide such matrimonial home, he will be responsible for her reasonable board. . . . . . . When she goes out from this matrimonial home, if the husband does not provide her with support there, she goes out with the credit of her husband for the necessaries of life . . . . . . by virtue of her relation to him as a member of the family having the right to claim those necessaries; and though she may be weak, though she may be feeble, though she may be insane, she is still entitled to have necessaries provided for her, and those who are willing to provide them for her would have a right of action against the husband." Of course, we do not intend to be understood, in adopting the foregoing language of the court below concerning the right of the husband to dictate as to the matrimonial domicile, that the rule stated may not, like most legal propositions, be subject to exceptions; but simply that such is the general rule. If there is evident unfitness in the husband's selection of the matrimonial domicile, we are not prepared to say, as matter of law, that the wife is bound to accompany him. *Powell* v. *Powell*, 29 Vt. 148; 9 Amer. & Eng. Encyc. Law, 812–813; Schouler's Domestic Relations, 3d ed. § 38, and cases cited. For with the constantly growing sentiment and legislation in favor of both the personal and property rights of married women, the harsh and arbitrary rules of the common law relating thereto are gradually and justly being modified and the more humane doctrine of equal rights before the law is coming to be recognized as far as practicable.

But the defendant further contends that he is not liable in this case for the reason that shortly after his wife went to the plaintiff's house to board, he provided a suitable place outside of his own house for her to board and be taken care of, and communicated this fact to Mr. Dorsey, her bail, and also

to Mr. Albert R. Sherman, who was instrumental in having her released from the hospital. We cannot assent to this proposition. Mrs. Carpenter was and long had been an invalid; she was in a very nervous and enfeebled condition and especially in need of that sympathy and loving care which could best be bestowed by near relatives. She wished to be near her sister, and as she had rightfully gone to the plaintiff's house after her husband had declined to support her outside of the hospital, we do not think he could relieve himself from the liability of paying for her board and care at plaintiff's house by simply providing a place for her amongst strangers. The defendant being of sufficient ability, was bound to provide for his wife in a manner suitable to her debilitated condition of health, and we do not think this duty was discharged in the peculiar circumstances of this case, by the provision which he subsequently made or offered to make for her. For, as well said by the presiding justice in his charge to the jury on this branch of the case, " When the husband fails and refuses to provide a matrimonial home and says: 'Here, I will support my wife at such a place, or at such another place,'—no matter how distasteful it may be to the wife, no matter how unfortunate it may be for her if her physical condition should be such as to require sympathy and attendance and the loving ministrations of kindred, if the condition of the wife be such that she is peculiarly dependent upon the ministrations and the presence of relatives, and the husband refuses or declines to provide this matrimonial home, then he cannot dictate to the wife, husband though he be, 'You may live anywhere except in the matrimonial home or in the home of your kindred.' That is going further than he, by law, as I understand it, has the right to go." We have considered the numerous other exceptions taken by the defendant's counsel, but do not think they are well founded.

The exceptions are overruled, and the judgment of the Court of Common Pleas is affirmed with costs of this court.

*Charles H. Page, Franklin P. Owen & Adoniram J. Cushing,* for plaintiff.

*Simon S. Lapham,* for defendant.