RICHARDSON and others, Trustees, Respondents, vs. STUES-
SER, Appellant.

*April 5—May 2, 1905.*

*Statutes: Construction: Support of insane persons, how enforced:
Husband and wife: Liability of husband for support of insane
wife.*

1. The incorporation of secs. 1500 to 1505, both inclusive, Stats. 1898,
   into sec. 604e thereof so as to be applicable to the insane, af-
   fects all such, the support of whom is not properly a public
   charge, and provides procedure to be followed in compelling
   those privately liable for such support to do so.
2. In harmony with sec. 1502, Stats. 1898, as to the poor, the trus-
   tees of a county asylum for the insane should proceed by peti-
   tion to the county judge to establish the liability of any one for
   the support of an insane person at such asylum, who refuses to
   perform his duty in that regard, and the amount which he
   should pay and the time of payment determined, in harmony
   with sec. 1504, and they may cause the order of the county judge
   in that regard to be enforced by contempt proceedings or by
   action.
3. An action to enforce such an order must be commenced in the
   name of the county in some court having jurisdiction of such
   civil actions. The county court does not possess such jurisdic-
   tion in the absence of special authorization.
4. The common-law liability of a husband to support his wife does
   not extend to supporting her outside the matrimonial home,
   reasonably chosen by him, unless he refuses to do so there, or
   she resides away therefrom by his consent.
5. Such common-law liability cannot be extended by implication
   from the written law as to the support of other persons. It can
   only be extended by a statute plainly so intended.
6. Where a wife, as a charity to her and protection to others, is by
   due process of law taken from the matrimonial home and con-
   fined in an asylum for the insane and the husband submits, or
   even takes the initiatory proceedings to secure for her the bene-
   fit of the public charity, there is no element of refusal by him
   to support her at the matrimonial home or consent by him to
   her absence therefrom, within the common-law rule rendering
   him liable for her support outside of such home.

7. There being no express statute in this state extending the common-law liability of the husband to support his wife in a case where she has been removed from his home by due process of law and maintained at an asylum for the insane, he is not liable in such circumstances.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Reversed.*

Appellant's wife in due form of law was committed to the La Crosse county asylum for the chronic insane. Upon the ground that he was of sufficient ability to maintain her at such asylum but refused to do so, the trustees thereof petitioned the county court of such county for an order requiring him to pay $3 per week therefor from and after September 1, 1903, so long as she remained therein. Such proceedings were duly had as to such petition that appellant was required to plead thereto, which he did by demurring to the jurisdiction of the county court over the subject matter and to the sufficiency of facts stated to show liability, and by putting in issue the facts alleged as to his ability to comply with the demand of the petitioners. The demurrer was overruled and the prayer of the petitioners granted. Appellant appealed to the circuit court for La Crosse county. A trial was had in such court resulting in findings that defendant's wife had been since December 10, 1901, an inmate of the asylum as stated in the petition, she having been in due form of law committed thereto; that he had complied with the demands of the trustees of the asylum as to furnishing clothing for her, but refused to contribute anything for her board and care; that she was not a pauper nor a public charge; that he was possessed of property and was otherwise of sufficient ability to pay reasonably for her maintenance at such asylum and was legally bound to do so; and that the sum of $2 per week was reasonable therefor. Judgment was thereupon rendered requiring defendant to pay the trustees of

such asylum $2 per week from December 22, 1903, so long as his wife should remain an inmate thereof, and awarding to them costs to the amount of $32.84. This appeal was taken therefrom.

For the appellant there was a brief by *Paul W. Mahoney* and *Morris & Hartwell,* and oral argument by *Thomas Morris.*

*Otto Bosshard,* district attorney, for the respondents.

MARSHALL, J. Several provisions of the statutes seem to have been called to the attention of the trial court to sustain the proceeding, which are relied on now to support the judgment. Each of them will be briefly referred to.

Considerable significance is claimed for sec. 604q, Stats. 1898. That makes the property of an insane person, who is kept in any state or county hospital or by any county otherwise at its expense, liable for his support, and provides a remedy for the enforcement of such liability. It throws no light on the right of the controversy here, since such controversy does not involve any claim of liability for the support of appellant's wife out of her property.

Sec. 600, Stats. 1898, is referred to as having some significance. It authorizes a district attorney, under the direction of his county board, in the name of his county, to "sue for and collect from the property of any patient maintained at" a state hospital for the insane at the cost of the county, or from any person legally bound to support such patient, the amount charged by the state to such county therefor. Plainly this matter is not within that field. No liability of the county is claimed to have been created by reason of the support of appellant's wife at such hospital; neither was this proceeding brought by the district attorney, nor was it an action within the meaning of the statute, nor was its commencement directed by the county board. The county judge in the absence of special authorization has no jurisdiction of

an action under such section, or the circuit court capacity to take jurisdiction by appeal from the county judge's order, except to dismiss the proceeding. *Klaise v. State,* 27 Wis. 462; *Butler v. Wagner,* 35 Wis. 54; *Miller v. Crawford Co.* 106 Wis. 210, 82 N. W. 175; *Stoltman v. Lake,* 124 Wis. 462, 102 N. W. 920; *Birdsall v. Kewaunee Co.* 124 Wis. 576, 103 N. W. 1.

Next we are referred to sec. 604e, Stats. 1898, negativing any liability of the state to any county by reason of the support by such county of any person at its county asylum for the insane, who is not a public charge, and making the "provisions of sections 1500 and 1505, both inclusive," applicable to the support of insane persons. Turning to such sections we find they refer to the relief and support of the poor. They declare that the father, mother and children, being of sufficient ability to care for any poor person, "who is unable to support himself, shall be liable for such support," and provide the method of procedure to enforce such liability, the moving parties being the town supervisors, the jurisdiction invocable that of the county court and the manner thereof being by petition as in this case. It is argued that the effect of incorporating such section into the one relating to the insane is to provide a remedy only for enforcing liabilities for the support by relatives of insane poor persons at county asylums and those of the particular class mentioned. It seems that would be too narrow a construction of the incorporating language. The express prohibition in sec. 604e of any credit from the state in favor of a county for the support of an insane person at a county asylum, the support of whom is not properly a public charge, coupled with writing into it, so to speak, secs. 1500 to 1505, suggests pretty plainly, if not conclusively, that as to a person duly committed to a county asylum, of the class mentioned, the proceedings to enforce the private liability must be under such sections, so far as they are applicable thereto. That would include the jurisdiction

to be invoked, the manner of invoking it, as by petition, and the procedure outlined in respect to the matter.

We are referred to ch. 245, Laws of 1899, as authorizing the commencement of proceedings in the name of the trustees. That makes the trustees of a county asylum for the chronic insane *ex officio* trustees of the county poor with power "to commence and prosecute in the name of the county any proper action or actions to enforce and collect any account, claim or demand that may arise or accrue to the county in their administration of the business affairs of such asylum," they to account to the county board of supervisors for all moneys so received or collected. The maintenance under the direction of the trustees of a county asylum for the insane of a person thereat, who shall have been properly committed thereto, whose support is not properly a public charge, would create a basis for a liability "in their administration of the business of" operating the asylum against the person or property liable for such support, but not a fixed liability constituting an "account, claim or demand," within the meaning of the statute. That term suggests the existence of a liability fixed in amount and payable.

Sec. 1502, Stats. 1898, as to poor persons, provides for a proceeding in the name of the town supervisors of the nature of the one resorted to here for the purpose of determining whether the person proceeded against is liable to the municipality, and if so, the amount of such liability and when payment should be made. That having been made a part of sec. 604e, as to the insane, it would seem that the proceedings to fix the amount of the liability of any person for the support of an insane person at a county asylum should be commenced as it was here, in the name of the trustees. The term "proper action" as used in the law of 1899 evidently refers to an ordinary action under the Code, which, without some special authorization therefor, cannot be commenced before a county judge. Such term does not refer to a special

proceeding of the sort resorted to here. Moreover, it does not authorize any proceedings other than in the name of the county.

Sec. 1504, as to the poor, provides for the enforcement of the county judge's order by contempt proceedings, and the following section provides for such enforcement by an action in the name of the town. In the absence of any other guide the fair inference would be that the same method of enforcement would be proper as to an order requiring a person to contribute to the county for the support of an insane person, the action to be brought in the name of the county, but the law of 1899 furnishes a definite guide, in that it provides that the action shall be so brought.

So the concluion is reached that if appellant's wife, while she was at the county asylum for the insane under a proper commitment thereto, was not a proper public charge, because he was by law liable for her support, the proceedings resorted to for the purpose of having such liability, the amount thereof and the time for its satisfaction adjudicated were proper. So the county court had jurisdiction of the subject matter of the proceedings and on that point there is no infirmity in the judgment.

We are not aware of any statute varying the common-law liability of a husband to support his wife. Counsel for respondent does not suggest any which expressly does so, but argues that our statutory policy is that only such insane persons shall be cared for at public expense in state or county hospitals as have no property that can be devoted thereto and no relatives legally bound therefor. This is true, but does not settle the question here at issue. No extension of the husband's common-law liability for the support of his wife can be predicated on mere legislative policy shown by the liability created by statute, or expressly recognized thereby as to other persons. New rights in derogation of the common law must rest upon unmistakable statutory provisions. The

common law is not subject to change by mere implication. A statute to accomplish such a change "must be clear, unambiguous and peremptory." Sedgwick, Stat. & Const. Law (1st ed.) 318 [2d ed. 275]; *Meek v. Pierce*, 19 Wis. 300; *Orton v. Noonan*, 29 Wis. 541; *School Directors v. School Directors*, 81 Wis. 428, 438, 51 N. W. 871, 52 N. W. 1049. So we are led to inquire whether by the common law a husband is liable to support his wife under the circumstances of this case. If not, then sec. 604*e* has no application to the matter in hand.

The liability of a husband for the support of his wife by common-law rules only requires him to do so in the matrimonial home, selected by him,—acting reasonably,—unless she is compelled to seek or accept support elsewhere because of his wilful neglect or refusal to perform his duty or her living apart from him by his consent. Generally speaking, the duty of the husband for the maintenance of his wife does not extend to the support of her while she is away from his home. *Sturtevant v. Starin*, 19 Wis. 268; *Warner v. Heiden*, 28 Wis. 517; *Bach v. Parmely*, 35 Wis. 238; *Brown v. Worden*, 39 Wis. 432; *Morgenroth v. Spencer*, 124 Wis. 564, 102 N. W. 1086.

It would seem that when a wife by due process of law, as a charity to her and protection to others, is taken from the society of her husband without fault of his and confined in an asylum for treatment or safety, or both, there is no refusal by him to support her in his home, even if he is an actor as regards setting the legal machinery in motion for the purpose of affording her the benefit of the public charity and guardianship, nor is there in such a case any consent by the husband to the wife's absence from his home within the meaning of the common-law rule, clothing her with his credit for the purpose of her support. There is no very great amount of authority on this question. The following are, in our judgment, the most important of the adjudicated cases

throwing light on the subject. It will be seen by a careful examination of them that they are substantially all one way though not entirely in harmony. *Delaware Co. v. McDonald,* 46 Iowa, 170; *Noble Co. v. Schmoke,* 51 Ind. 416; *Switzerland Co. v. Hildebrand,* 1 Ind. 555; *Marshall Co. v. Burkey,* 1 Ind. App. 565, 27 N. E. 1108; *Davis v. St. Vincent's Inst.* 61 Fed. 277, 9 C. C. A. 501; *Watt v. Smith,* 89 Cal. 602, 26 Pac. 1071; *Wray v. Wray,* 33 Ala. 187; *Monroe Co. v. Budlong,* 51 Barb. 493; *Goodale v. Lawrence,* 88 N. Y. 513, overruling *Goodale v. Brockner,* 25 Hun, 621; *Bangor v. Wiscasset,* 71 Me. 525; *Senft v. Carpenter,* 18 R. I. 545, 28 Atl. 963; *Howard v. Whetstone,* 10 Ohio, 365; *Springfield v. Demott,* 13 Ohio, 104; *Baldwin v. Douglas Co.* 37 Neb. 283, 55 N. W. 875.

The Iowa, Nebraska, and Indiana cases are to the effect that there is no common-law liability of the husband in cases of this kind. In the New York, Rhode Island, Alabama, and Federal cases liability was adjudged, but in each instance there was an abandonment of the insane wife and the decision was placed on that ground. The California decision was based on a statutory liability. We venture to say that no court, which has considered and decided the question upon its being the turning one, as in the case in hand, or its being sufficiently involved to challenge careful attention to the matter, has held that there is any common-law liability of the husband in circumstances similar to those in this case. The basic idea of the common-law rule is that in the special instances where the wife is permitted to use the credit of her husband for her relief and support, she is his agent *ex necessitate legis* or *ex necessitate rei,* failure of duty on his part being the cause of the need. There is no room whatever for that idea where the charity of the law intervenes without fault on the part of the husband for the care and protection of the unfortunate wife, and public safety supersedes him as regards authority and capacity to care for her in his home.

Our conclusion is that till the legislature makes some express provision to the contrary, no recovery can be had of the husband in a case of this sort. Therefore, the judgment appealed from must be reversed.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded with directions to render judgment in favor of the appellant.