School Directors of Pelican vs. School Directors of Rock Falls.

THE BOARD OF SCHOOL DIRECTORS OF THE TOWN OF PELICAN, Respondent, vs. THE BOARD OF SCHOOL DIRECTORS OF THE TOWN OF ROCK FALLS, Appellant.

*February 6 — March 22, 1892.*

*School districts: Division: Apportionment of debts and assets: Word "credits" construed: Evidence.*

1. Ch. 334, Laws of 1885, entitled, "An act to provide for . . . the distribution of debts and *assets* . . . on the erection of counties," etc., provides (sec. 2) that when any territory shall be detached from one school district and annexed to another, the latter shall be liable to the former for "its just share of the liabilities and indebtedness," and shall receive from the former "the just share of the *credits.*" *Held,* that the word "credits," as used in the act, means the balance of the assets of the district from which the territory is detached, after deducting its debts and liabilities. It includes, therefore, school-houses, school sites, furniture, and fixtures. PINNEY, J., dissents.

2. The stubs of school orders said to have been given by a school district during a period of about eight years before and eight months after its division, are not evidence of any indebtedness existing at the time of such division.

3. A judgment against a school district, which had been fully provided for by a special tax levied before the division of the district and was afterwards paid with the moneys collected thereon, was properly excluded from consideration in the apportionment of debts and assets.

APPEAL from the Circuit Court for *Lincoln* County.

This action was commenced December 8, 1888, to recover $1,187.08, with interest from January 20, 1888, as the alleged surplus of credits and assets over liabilities existing January 1, 1887, at which time the plaintiff was created out of a portion of the original territory constituting the defendant town. The complaint is in the appropriate form. The defendant's answer, among other things, alleges a counterclaim to the amount of $1,894.15, with interest. The plaintiff replied to the counterclaim, May 8, 1889. The

cause was referred to Hon. C. V. Bardeen to hear, try, and determine. A trial was had before the referee, who made and filed his report therein on or about September 23, 1889, in and by which he found, among other things, as matters of fact, in effect as follows:

That the plaintiff and defendant respectively were incorporated and organized; that for a long time prior to 1885 the town of Pelican was one of the duly organized towns of Lincoln county; that during said year it adopted the town system of school government and became one school district, and that the plaintiff is its board of directors; that the town of Rock Falls now is, and ever since January 1, 1877, has been, one of the duly organized towns of Lincoln county; that during the year 1878 it adopted the township system of school government, and became one school district, and has so continued ever since, and that the defendant is its board of directors; that by virtue of ch. 411, Laws of 1885, which went into effect January 1, 1887, the town of Pelican became one of the duly organized towns of Oneida county; that January 1, 1887, by virtue of that act, townships numbered 36, 37, and 38 N., of range 6 E., were detached from the town of Rock Falls in Lincoln county, and attached to the town of Pelican in Oneida county, and that, according to the last assessment of the town of Rock Falls prior to such division, the value of the territory so detached from the town of Rock Falls and attached to the town of Pelican was to the value of the whole territory of said town as 43 1–6 is to 100, and that the plaintiff in this action is entitled to recover from the defendant judgment for 43 1–6 per cent. of the net assets of the defendant January 1, 1887; that January 1, 1887, the defendant was the owner of school-houses, school sites, furniture, and fixtures to the amount and value of $1,000, which said property was on that day an asset in the hands of the defendant; that in the spring of 1886 a school tax levy was duly made by the

town of Rock Falls to the amount of $1,500, and that in the fall of 1886 said sum was inserted by the town clerk of said town in the tax roll for said year, and that said sum was in fact levied during said year, and that the same was, by the treasurer of said town, duly collected, and the whole thereof, and that the same was an asset in the hands of the defendant January 1, 1887, and was in fact collected on that date by the treasurer of the defendant, or shortly after, and long prior to the commencement of this action, and that no part of the same was disbursed or expended prior to January 1, 1887; that the county board of Lincoln county apportioned a county school tax on the said town of Rock Falls, during 1886, of $100, for the use and benefit of the defendant, and that the same was duly inserted in the tax roll for said year, and collected and paid to the defendant's treasurer in December, 1887, and that the same was an asset belonging to the defendant January 1, 1887; that January 6, 1887, there was a balance in cash in the defendant's treasury, belonging to the school fund of the defendant, amounting to at least $158.72 over and above the $1,372.45 which had previously been paid out and disbursed from the $1,531.41 which had been paid to the defendant by the treasurer of Lincoln county in June and November, 1886, and that said sum of $158.72 was, January 1, 1887, an asset in the hands of the defendant; that said several assets, consisting of school-houses, sites, furniture, and fixtures, town school tax levy of 1886, county school tax for the town, and cash in the treasury, amounted in the aggregate to $2,758.71, and that the plaintiff was and is entitled to receive and recover of the defendant, as its share thereof, 43 1–6 per cent. of that amount; that January 1, 1887, there was no outstanding indebtedness against the defendant, except a judgment in favor of Priest, which was fully provided for by a special tax levied by the town for 1886, and which was duly collected to an amount sufficient to

pay the same, and that said judgment was duly paid and satisfied from the money collected on said special tax; that the defendant has failed to establish or prove any of the allegations of the counterclaim; that the allegations of the plaintiff's complaint are all true.

And as conclusions of law the referee found that the plaintiff was entitled to recover judgment against the defendant for 43 1-6 per cent. of said $2,758.71,— that is to say, $1,190.64,— together with interest thereon from August 20, 1888, at seven per cent., and for its costs and disbursements of this action, and that the defendant take nothing by its counterclaim.

Upon the motions of the respective parties to confirm the report and to set aside and to modify the same, the court, January 15, 1890, ordered that the report of said referee be, and the same was thereby, in all things confirmed, and it was further ordered that judgment be entered thereon in favor of the plaintiff and against the defendant for the amount named, with interest, costs, and disbursements. From the judgment entered thereon accordingly the defendant appeals.

For the appellant there was a brief by *Milo Woodbury,* attorney, and *H. C. Hetzel,* of counsel, and oral argument by *Mr. Woodbury.*

For the respondent there was a brief by *A. W. Shelton* and *Alban & Barnes,* and oral argument by *John Barnes.*

CASSODAY, J.  By virtue of ch. 411, Laws of 1885, three government townships were detached from the town of Rock Falls in Lincoln county, and attached to the town of Pelican in Oneida county.  Such division became complete January 1, 1887, as mentioned in the foregoing statement.  Long prior to such division said towns had, respectively, adopted the township system of school government; and thereby each of said towns became and was on that

day one school district, and has so continued ever since. By virtue of such division and the statute applicable, the town of Pelican became liable to the town of Rock Falls for " its just share of the liabilities and indebtedness " of the latter town prior to such division, and was entitled to receive from the latter town its " just share of the *credits* " belonging to Rock Falls prior to such division, to " be apportioned by ascertaining what ratio the portion detached bears to the territory from which the same was detached," according to the last prior assessment therein. Sec. 2, ch. 334, Laws of 1885. The referee and trial court found that upon such apportionment of such debts and liabilities and such credits, or, to use the word employed by the referee, such " assets," there was a balance of the latter over the former of $2,758.71; and that the plaintiff's proportionate share thereof, so ascertained, was $1,190.64, with interest from August 20, 1888. The most important question presented is whether the word " *credits*," in the section of the act cited, is broad enough to include the $1,000 for schoolhouses, school sites, furniture, and fixtures, which went into the sum so apportioned.

As ordinarily used in trade and business, the word " credit" suggests nothing more than a *chose in action.* " In bookkeeping " it is " the side of an account on which payment is entered; opposed to *debit;* as, this article is carried to one's credit and that to one's debit." Century Dict. The Imperial is substantially the same. As used in bookkeeping, Worcester gives this definition: " That side of a personal account on which everything is entered that answers as an offset to a debt; as, 'to carry money, goods, or notes to the credit of A. B.;' that which is entered in an account as an offset to a debt, or for which the party in whose favor the entry is made becomes the creditor of another; as, 'the credits exceed the debts.'" Webster gives a similar definition.

School Directors of Pelican vs. School Directors of Rock Falls.

It is a universal rule, requiring no citation of authority, that "a statute is to be interpreted not only by its exact words, but also by its apparent general purpose." *U. S. v. Saunders*, 22 Wall. 492. In *U. S. v. Freeman*, 3 How. 565, Mr. Justice WAYNE, speaking for the court, stated some rules of construction more or less applicable here, as follows: "Whenever any words of a statute are doubtful or obscure, the intention of the legislature is to be resorted to in order to find the meaning of the words. A thing which is within the intention of the makers of the statute is as much within the statute as if it were within the letter. . . . The meaning of the legislature may be extended beyond the precise words used in the law, from the reason or motive upon which the legislature proceeded, from the end in view, or the purpose which was designed; the limitation of the rule being that, to extend the meaning to any case not included in the words, the case must be shown to come within the reason upon which the law-maker proceeded, and not only within a like reason. . . . In the construction of statutes one part must be construed by another. In order to test the legislative intention, the whole statute must be inspected." "When the courts know," said SAVAGE, C. J., "for what particular mischief the legislature intended to provide a remedy, it is their duty to so construe the statute as most effectually to suppress the mischief and advance the remedy." *Coster v. Lorillard*, 14 Wend. 297. Thus it has recently been held in England that, "where the main object and intention of a statute are clear, it must not be reduced to a nullity by the draughtsman's unskilfulness or ignorance of law, except in the case of necessity or the absolute intractability of the language used." *Salmon v. Duncombe*, L. R. 11 App. Cas. 627. This court has frequently enforced such and similar rules. *Harrington v. Smith*, 28 Wis. 43; *State ex rel. State Ag. Soc. v. Timme*, 56 Wis. 425; *Palms v. Shawano Co.* 61 Wis. 211.

Upon the same principles it has recently been held in Pennsylvania that the word "county" in a particular statute must be construed to mean "city." *Lancaster Co. v. Frey*, 128 Pa. St. 593.

Here the title of the act is: "An act to provide for procuring public records, the distribution of debts and *assets*, and pertaining to the collection of taxes, on the erection of counties and municipalities." The word "assets" is of much broader application than is ordinarily applied to the word "credits." Thus Burrill, among other things, in effect says that assets include "the real and personal property of a party deceased, which, either in the hands of his heir or devisee or of his executor or administrator, is chargeable with the payment of his debts and legacies." He further says, in effect, that the word is not confined to personal property, "for all other property of the deceased which is chargeable with his debts or legacies, and is applicable to that purpose, is, in a large sense, assets. . . . In a larger sense, the property or effects of any individual or corporation, available for the payment of his or its liabilities." Other dictionaries give similar definitions. Manifestly the word "assets" is sufficiently broad to include school-houses, school sites, furniture and fixtures. True, the collection of debts may not be enforceable out of them, but that does not militate against their being regarded as assets.

The question recurs whether the word "credits," as used in the act mentioned, may be fairly construed to mean the balance of the assets belonging to the town after deducting its debts and liabilities. It is to be remembered that the several inhabitants of Rock Falls, at the time of such division, had an equal interest in and equitable right to such assets as then belonged to that town. It is not to be presumed that the legislature would intentionally have frustrated or destroyed such equality and right by such

division. On the contrary, that body would naturally be prompted to preserve the same. Such divisions necessitate an adjustment, and the striking of a balance between the assets on the one hand and the debts and liabilities on the other. Such balance, when thus ascertained, would stand to the *credit* of the town, to be apportioned as indicated. The word "credits" is obviously used in the act in the sense it is employed in book-keeping — as contradistinguished from debts and liabilities; that is to say, as a balance of the assets after deducting debts and liabilities. In view of the general purposes of the act, the use of the word "assets" in the title, and the rules of construction mentioned, we must hold that the word "credits," as used in the act, includes such balance of the assets of the town at the time of such division, after deducting such debts and liabilities; and hence includes school-houses, school sites, furniture and fixtures. Upon the same principles it includes the town school tax levy of 1886, the county school tax for the town, and the cash in the treasury mentioned in the foregoing statement.

Upon the trial the defendant contended that the debts and liabilities of the town at the time of the division were very much greater than finally found by the referee. The principal evidence offered of such debts and liabilities consisted of the stubs of orders said to have been given between May 5, 1879, and August 29, 1887: Error is assigned because such stubs were excluded. We are clearly of the opinion that such ruling was correct. Such stubs did not tend to prove any existing indebtedness, and were clearly irrelevant, immaterial, and incompetent. The Priest judgment having been fully provided for and paid by a special tax levied and collected for that purpose, as mentioned in the foregoing statement, was properly excluded in the matter of apportionment. The testimony in the case is voluminous. It is enough here to say, after

`436` SUPREME COURT OF WISCONSIN. [81

School Directors of Pelican vs. School Directors of Rock Falls.

careful consideration, that in our judgment the findings of the learned referee are sustained by the evidence. We find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.

PINNEY, J. I cannot concur in the opinion of the court that the word " credits " as used in sec. 2, ch. 334, Laws of 1885, includes school sites, school-houses, and furniture and fixtures, or the value thereof, or any tangible property whatever. It clearly signifies in this statute, as it does in book-keeping and commercial and business transactions, the opposite of debits, that which is due to any person as contradistinguished from that which he owes; for without the relation of creditor and debtor there can be no such thing as a " credit." 4 Am. & Eng. Ency. of Law, 572; *Barnes v. Treat,* 7 Mass. 271, 274. It does not include lands, tenements, and hereditaments, or goods and chattels. No one making or receiving a transfer of any such property would suppose that it would be included by the mere designation of " credits " of the grantor or assignor. I think there is no general or popular or technical use of the word that will make it extend to and include, as used in the statute, specific real or chattel property. The concession in the opinion of the court that " as ordinarily used in trade and business the word credit suggests nothing more than a chose in action," is, I think, fatal to the judgment given in this case. No broader use or signification by general or popular use of the term is suggested. Therefore, as used in this statute, its meaning is clear, definite, and unambiguous, and includes only those debts, dues, or items of liability due or coming to the respondent district with which to meet its current liabilities.

The statute is a general one, applicable to all cases of division of a county, town, city, or school district, and was

doubtless framed upon careful consideration. It is hardly to be supposed that any wish or intention of the legislature in respect to the subject was left without proper considera- tion or expression. There is no room, therefore, for legiti- mate construction; and construction not founded upon the words of the act, upon statutes *in pari materia*, or upon some other reasonably clear and definite matter of which courts can judicially take notice, is simply mere guess-work and perversion, leading to the most uncertain and therefore dangerous consequences. Without some such guide the maxim, as old as Plowden, that "a thing which is within the *intention* of the makers of the statute is as much within the letter," becomes merely a jingling proverb and not an intelligent and practical rule. The preamble and purview of the act, statutes *in pari materia*, and the like are the only means by which courts give effect to this maxim, which would otherwise leave matters in the most distressing un- certainty. Statutes are to be construed by the language the legislature has used, and it is only where a statute is capable of two or more meanings that interpretation or any latitude of construction is allowable, and where the language in question is fairly susceptible of but one construction or meaning, then the office of interpretation or judicial exposi- tion is gone and the courts have nothing to do but to give effect to the statute in that sense. Courts cannot correct supposed errors, omissions, or defects in legislation. *Ogden v. Glidden,* 9 Wis. 46; *Mundt v. S. & F. du L. R. Co.* 31 Wis. 457, 458. It is the *expressed* intention only of the leg- islature which the courts are authorized to carry into effect. Endlich, Stat. sec. 8. These are familiar rules fully recog- nized in the cases cited in the opinion of the court, and it is well settled that the courts have no right to extend a statute upon their own notions of what is equitable, just, and wise to matters in respect to which the legislature has given no expression. To do so is the office of legislation

and not of interpretation or construction. Courts cannot imagine an intent and extend the letter of the act to it. *Smith v. State*, 66 Md. 217; *Bradbury v. Wagenhorst*, 54 Pa. St. 182; *Woodbury & Co. v. Berry*, 18 Ohio St. 460; *Denn v. Reid*, 10 Pet. 527. As was said by Lord DENMAN in *Green v. Wood*, 7 Ad. & E. 185, "Those who used the words thought they had effected the purpose intended. But we, looking at the words as judges, are no more justified in introducing that meaning than we should be if we added any other provision."

By the common law, if a part of the territory of a county, town, or school district is separated from it and annexed to or organized into another, the original corporation or organization retains all its property, property rights, and franchises, and remains subject to its former debts and obligations, unless some express statutory provision is made to the contrary. *Crawford Co. v. Iowa Co.* 2 Pin. 368; *Milwaukee v. Milwaukee*, 12 Wis. 93; *Briggs v. School District*, 21 Wis. 348; *De Pere v. Bellevue*, 31 Wis. 120. There is nothing in the language of the act or in its purview or in legislation *in pari materia* to justify the supposition that the legislature intended to make any change in the common law beyond what is clearly expressed, and a statute is not to be construed as a repeal of the common law unless the intent to alter it is clearly expressed so as to leave no doubt of the legislative intent. Sedgw. on Stat. 313, 318; Potter's Dwarris, 236, 239, 240; *Comm. v. Rumford Ch. Works*, 16 Gray, 231; *Orton v. Noonan*, 29 Wis. 541; *Meek v. Pierce*, 19 Wis. 303. Beyond what is expressed in the statute, courts cannot indulge in any presumption.

The decision of the court seems to rest, almost if not entirely, upon the use of the word "assets" in the title of the act, by giving that word an extremely enlarged significa- tion, as indicating that the legislature used the word "credits" in the body of the act as synonymous with and

embracing all property of the district, whether real or personal, although the word would otherwise have no such signification. It had been formerly held in England that the title of an act is no part of the act itself and could not be resorted to in aid of its meaning. Sedgw. on Stat. 39. But in later cases and in this country it has been held that where the words of the act are doubtful it may be resorted to to remove ambiguities. It cannot be resorted to in order to extend the act to subjects not embraced in it, nor to *create* uncertainty or ambiguity in order to give room for construction. Mr. Sedgwick in the last edition of his book on Statutory Construction, page 40, prefers the original rule denying any effect to the title, and says: " The title is rarely a matter of debate or scrutiny; and though it may, and doubtless does, give a general idea of the purport of the act, still it is precisely in case of nicety and doubt that it cannot be relied on." In *Pulis v. Dearing*, 7 Wis. 222, the same view was taken by this court, and it was there said: "It must be admitted that the mere title of an act is a very unsafe guide to aid us in ascertaining, even in the most general manner, the meaning of an act, while the preamble is only resorted to in doubtful cases to discover the scope and purport of a statute from the mischiefs which are to be remedied and the objects to be accomplished by its provisions. But however useful the title and preamble may be for collecting the intent and showing the mischiefs the framers of the act intended to remedy, still, obviously, they *cannot enlarge the scope and operation of the statute.*" It is simply to extend the scope and operation of the act that its title is resorted to here, for there is nothing in the act itself to justify the assumption that the legislature thought that the common-law rule was either unjust, unwise, or inequitable as applied to real or chattel property. There was no legal necessity that the act should have a title, as it is a general and not a private or

The State ex rel. Attorney General vs. Cunningham.

local act.    While in the case of a *private* act this court held that by reason of the constitutional provision (Const. art. IV sec. 18) the title might be referred to in aid of the act, it has not until now gone, so far as I am aware, beyond the rule laid down in *Mundt v. S. & F. du L. R. Co.* 31 Wis. 462, and sustained by many adjudicated cases elsewhere, allowing resort to the title only in cases of ambiguity or doubtful construction.    To this effect are *Field v. Gooding*, 106 Mass. 310; *Comm. v. Slifer*, 53 Pa. St. 73; *In re Boston M. & M. Co.* 51 Cal. 624, 625, and *Garrigus v. Board of Comm'rs of Parke Co.* 39 Ind. 70, 71.    The reference to the title of the act to introduce a doubt, and so give rise to an apparent necessity for construction when there is none without it, was, I think, unauthorized; and I dissent from the judgment of the court holding that the value of the school-house and site was properly included in the adjustment of the rights of the two districts.