## VILLAGE OF MONTICELLO AND OTHERS v. CITIZENS STATE BANK OF MONTICELLO, BY A. J. VEIGEL.[1]

May 23, 1930.

No. 27,900.

*D. F. Nordstrom,* for appellants.
*H. S. Whipple,* for respondents.

HOLT, J.

The appeal is from a judgment for $4,901.90 in favor of plaintiffs as a preferred claim against the Citizens State Bank of Monticello, Minnesota, and A. J. Veigel as its receiver.

The facts are these: Worth Brasie, one of Monticello's first settlers, who for many years was there engaged in business, in April, 1920, proposed in writing to the three banks therein to create a trust fund for the erection of a public library building in the

[1]Reported in 230 N. W. 889.

village for the use and benefit of its inhabitants, by depositing for that purpose $10,000, one-third thereof in each of the said banks, of which defendant bank was one. He deemed the then price of labor and materials entirely too high to erect the building he intended the village should have and thought the banks might be willing to augment the fund by paying six per cent annual interest, compounded semi-annually, upon the funds intrusted to them while awaiting a more propitious time for building. The defendant bank, and it is assumed the other two, accepted the trust and received one-third of the $10,000. With accumulations the fund is correctly represented by the judgment. Prior to the erection of the building the defendant bank became insolvent and was taken over by the state commissioner of banks, defendant A. J. Veigel, for the purpose of liquidation.

Whether the fund thus received by the bank was received as a deposit or loan or as a trust fund to be kept intact and accounted for as such is the one and only question raised by the appeal. The tracing of trust funds is not involved, for although the bank is found insolvent there is nothing to indicate that the cash on hand from the time the money was received until defendant Veigel came into possession was at any time less than the amount of the judgment. As we see it, the decision turns upon the proper construction of the writings under which the bank received the money. If thereunder it was a trust fund, a wrongful commingling thereof with the bank's other assets would not destroy its character or prevent the cestui que trust from claiming it as a preference.

The proposal is too lengthy to set out in full and so is the written acceptance by the bank. The particular features therein which appellants stress as showing that the money was received as a loan or deposit are these: The agreement of the bank to pay six per cent interest on the fund, semi-annually compounded; and in the proposal it is stated:

"Next July and prior to July 10th I will deposit in your banks the sum of $10,000 in about equal distribution to the credit of 'Worth Brasie Library Fund' and there said deposit to remain until that

time when it, with the interest additions thereto, together with the recession of the cost of labor and material, will fully pay the entire cost of the building."

It is to be admitted that the agreement to pay interest is indicative of the relation of lender and borrower and so is the use of the word "deposit," which ordinarily means that the moneys deposited are to become a part of the general assets of the bank and used as such, making the depositor a general creditor of the bank. But the use of a word or phrase in a lengthy agreement is not determinative. The whole agreement, its purpose and scope should be considered. So doing there can be no fair doubt of the fact that Worth Brasie intended to constitute the $10,000 a trust fund in the hands of the banks for the purpose of the erection by the village of a public library for the use of its inhabitants. The donor states that he felt under obligation to the people of Monticello and Wright county and desired to do something for their enjoyment so he has concluded to erect a public library; but high prices made the contribution decided upon insufficient, and in anticipation of lower prices for construction at no distant future he gives to the banks this $10,000 in trust, to be kept as a fund, stipulating that the banks augment the fund by adding thereto interest at six per cent per annum, compounded semi-annually. We do not think this should be construed as giving the banks the right to mingle the fund with the general assets of the banks or borrowing it. The donor thus expresses it:

"It occurred to me, the object to be gained, to-wit: a library building, beautiful and attractive—your banks being truly loyal to the town's best interests and the said 'Fund' to remain for a time undisturbed, you might consent to pay 6% annual interest semi-annual compounding, the same being one per cent more than you now pay, which would give each bank stockholder a pecuniary interest in the building and in a manner almost unconsciously.

"As the said 'Fund' will be held in trust for the purposes as herein set forth, I desire the Board of Directors of each bank to give me their bond that the details of this proposition will be faithfully performed. I need not say that you well know that it would not be

in the least a reflection upon the soundness and stability of your banks, but it would be an indication of unanimity of spirit and pledge of co-operation in the project which co-operation is of so great importance."

This language is readily construable as not exacting interest for the use of the fund, but rather as a bargaining for a contribution from the banks of an annual rate or percentage to the increase of the trust fund. Duncan v. Anderson, 120 Okl. 194, 250 P. 1018, is an example that a provision for allowance of interest does not necessarily determine that there was a general deposit. When it is considered that the documents evidencing the transaction are drawn by a layman, there ought not to be any doubt of the intention of the donor to make the banks trustees of a trust fund for the purpose stated. That he accomplished the purpose and did not create the relation of himself as lender or creditor to the bank is apparent from the legal deduction that no creditor of Worth Brasie could have reached the fund by legal process, nor could Brasie have sued the banks and recovered on account of this gift unless the village failed to take steps to erect the library within 20 years. In any view of the transaction, if it was not a loan or general deposit, it was a special deposit to be disbursed by the banks for a particular purpose and thereby they became trustees thereof; and in case of insolvency the cestui que trust is entitled to preference unless good grounds to the contrary are shown. Blummer v. Scandinavian Am. State Bank, 169 Minn. 89, 210 N. W. 865, and authorities therein cited.

Although the money received from Brasie was a trust fund and the bank received it as trustee, it could of course convert the fund so that in case of the bank's insolvency the cestui que trust would be unable to lay hold of the identical fund or obtain a preference over general creditors. But that the right to a preference is so lost is not made a defense either by pleading or proof. The answer admits the writings, the proposal and acceptance, and avers that the legal effect thereof was to make the bank a borrower or ordinary depositor of the donor and not the trustee of a trust fund. If, as

we hold, the bank became a trustee, then the cestui que trust is entitled to a preference unless there be a showing that the cash that came into the hands of defendant Veigel does not equal the trust fund, or that the cash on hand after the receipt of the trust fund was at any time so depleted that a conversion of the fund is established. (Blythe v. Kujawa, 175 Minn. 88, 220 N. W. 168, 60 A. L. R. 330.) Nothing of the sort was attempted, for, as stated, the defense was predicated wholly upon the legal interpretation of the writings under which the money was received. In the absence of such evidence the presumptions are that a trustee will keep trust funds intact and separate from his own funds, and that he will not use or convert moneys held in trust to meet any of his own obligations.

Defendants cite from Hjelle v. Veigel, 169 Minn. 173, 210 N. W. 891, the statement:

"A deposit in a bank is general unless there is an agreement that it shall be special, or be applied to a special purpose, or it is impressed with a trust."

We think here the money was accepted by the bank in the capacity of a trustee—there was no need of impressing a trust.

Strong reliance is placed on Missouri Mut. Assn. v. Holland Banking Co. 220 Mo. App. 1256, 290 S. W. 100, where the plaintiff raised $5,000, which under a statute it was required to keep on deposit in some bank in order to conduct an insurance business. The defendant bank failed, and the suit was to establish a preference. There, also, was a provision in the agreement to pay interest. Under the statute and the peculiar agreement the court construed the deposit to be general and not special, and the court deemed the decision of the supreme court in Paul v. Draper, 158 Mo. 197, 200, 59 S. W. 77, 78, 81 A. S. R. 296, controlling wherein it states:

"The rule to be deduced from all these cases when considered together, and which may be characterized as the Missouri doctrine in contradistinction from that prevailing in some other jurisdictions, with which it is not in harmony, is, that where a trustee, agent or

bailee wrongfully mixes trust money with his own, so that it cannot be distinguished which is his own, and which is trust money, and becomes insolvent, equity will follow the trust money, by taking out of the insolvent estate of the fiduciary the amount due the cestui que trust, although it cannot be identified or separated from the other funds with which it was mixed.

"In order to bring the plaintiff's case within the operation of this rule the fiduciary relation of the bank to the deposit must appear. The bank could not wrongfully mix the trust fund with its own unless by reason of the deposit it becomes a trustee, agent or bailee of that fund for the benefit of the cestui que trust," etc.

In the Holland Banking Co. case, 220 Mo. App. 1256, 290 S. W. 100, the bank did not become a trustee by virtue of the deposit so as to make the use thereof wrongful. In fact the statute seems to have required it.

In the instant case the bank by agreeing to become a trustee of the fund precluded itself from rightfully mingling the same with its own funds or dealing therewith otherwise than as a trustee.

The judgment is affirmed.