# CITY OF CANBY v. BANK OF CANBY AND ANOTHER.[1]

November 23, 1934.

No. 30,020.

*Thomas E. Latimer,* for appellants.
*J. N. Johnson,* for respondent.

*JULIUS J. OLSON, Justice.*

Defendants appeal from an order denying their motion for new trial.

The case was heard by the court. Findings were made upholding plaintiff's claim, to the effect that a certain deposit of $1,531.09 in defendant bank at the time of its closing was a preference claim. The question for determination is whether or not, as stated by appellants, the finding that the fund involved was received by the de-

[1]Reported in 257 N. W. 520.

fendant bank as a trust fund to be by it kept and accounted for as such, is sustained by the evidence. The facts, which are not in dispute, may be summarized thus:

Canby is a city of the fourth class. Defendant Bank of Canby is a corporation organized under the banking laws of this state and was such over a long period of time prior to May 9, 1931, at which time the defendant commissioner of banks took the same over for liquidation. He remains in full charge of its affairs, which are now being administered by him as official receiver. One John Swenson was an early settler of Canby and there resided until his death July 4, 1914. He was a man who was greatly attached to the community in which he lived and entertained friendly feelings toward his home city and to the inhabitants thereof. He became a man of wealth and for many years prior to his death was engaged actively and extensively in the banking business in Canby and elsewhere. At the time of the preparation of the instrument upon which the present claim of plaintiff rests he was president of the bank and in active charge thereof. It was his thought that, to promote thrift and frugality on the part of the people of his community and as a memorial of his friendship to his home city and to its inhabitants, he would leave with the bank the sum of $1,000 to be by it held and used for the purposes set forth in an instrument by him prepared and reading as follows:

"The Bank of Canby, Minnesota, $1,000. Certificate of Deposit $1,000.

"This is to certify that John Swenson of the city of Canby, Minnesota, has deposited with the said Bank of Canby of said city the sum of one thousand dollars ($1,000) to be held by said bank, its successors and assigns, subject to the terms, conditions and trust following, namely: Interest upon said sum is to be credited and added to the principal at the rate of four (4%) per cent per annum every six (6) months for the period of ONE HUNDRED AND TEN (110) years during the whole of which period the interest thereon at the rate shall be compounded as aforesaid, at the expiration of which period said sum will amount to SEVENTY-SEVEN THOU-

SAND, EIGHT HUNDRED EIGHTY-NINE AND SIXTEEN HUNDREDTHS ($77,889.16) DOLLARS.

"At the expiration of said period of one hundred and ten (110) years, said Bank of Canby, its successors and assigns, shall pay the above named sum to the city of Canby in the state of Minnesota as a gift from the said John Swenson. This certificate of deposit is not transferable and on the payment of said sum of SEVENTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-NINE AND SIXTEEN HUNDREDTHS ($77,889.16) DOLLARS to the city of Canby at the expiration of said period, viz., March 25th, A. D. twenty hundred twenty-three (March 25th, A. D. 2023) the same shall be taken up and canceled if it can be found and produced for cancelation, it shall upon such payment to said city become absolutely null and void, and liability of said bank, its successors and assigns, in respect thereof shall cease and terminate.

"At the expiration of every six (6) months during said period of one hundred and ten (110) years from date, said bank, its successors and assigns, shall notify said city in writing of the amount of said fund, like notices shall also be sent to said John Swenson during his life time.

"If at any time, for any reason, said bank, its successors or assigns, should find it impracticable or impossible to carry out the conditions aforesaid, the said fund with accumulations shall at once become due and payable to said city of Canby, Minnesota.

"EXECUTED AT CANBY, MINNESOTA, this 25th day of March, 1913.

"THE BANK OF CANBY, MINNESOTA, by John Swenson, President, Attest, Samuel Lewison, Cashier.

"I hereby agree to all the conditions in above certificate of deposit, provided, however, that in case the Bank of Canby, of Canby, Minnesota, its successors or assigns, should at any time for any reason (on March 25th, 2023) relinquish this deposit and accumulations, as provided in the last paragraph of the above certificate, then the city of Canby shall deposit said fund and accumulations in some other solvent bank of not less than one hundred and twenty-five thousand ($125,000) dollars of capital and surplus.

"However, should it be found impossible to secure the said four (4%) per cent rate of compound interest, then the said city of Canby shall deposit said fund and accumulations at the best rate of compound interest obtainable. These stipulations shall apply in all contingencies, whenever, and as often as the same may occur before maturity of this fund.

"The undersigned further declares that the city of Canby shall be at liberty to make such use or disposition of said fund when the same becomes due and is paid as may seem proper and for the best interest of the community, not forgetting the poor, the sick and helpless and a reasonable protection for dumb animals. Such action on the part of the city of Canby would meet with the wishes and sympathies of John Swenson, the donor of this gift.

"Dated at Canby, Minnesota, this 25th day of March, A. D. 1913.
"Witnesses: C. C. Nordmeyer,
    "J. P. Langmack.

                    "John Swenson."

In accordance with the foregoing agreement, the money was turned over to the bank, and upon its books the transaction was recorded under the following heading:

(Name) "City of Canby as deposited by John Swenson in trust for said city to be paid March 25th, 2023, with interest compounded semi-annually at four per cent (4%) per annum."

The account continued under this heading from the date of the agreement until the closing of the bank. At the end of each six months' period there was credited to the account the interest accrued and the same was added to the principal sum. At the time of its closing the fund amounted to $2,041.46. Prior to the commencement of this action there had been paid to plaintiff, presumably out of the liquidation, $510.37, thus leaving a net balance unpaid of $1,531.09. Plaintiff duly filed a claim with the commissioner and sought to establish that the remaining balance was entitled to a preference. The claim was allowed in full as a general claim, but preference was refused. By reason thereof this action was brought, with the result stated. Defendants moved for

amended findings in so far as these relate to the preference sought and obtained by plaintiff. There is no issue in respect of plaintiff having a claim against the bank for the amount found. The only issue relates to whether or not the claim should be allowed as a preference. The trial court refused to make the proposed amendments, and its refusal so to do is urged as error.

■ Claims for preference have arisen of late years in numerous instances. Many cases have been brought before this court involving this question. In other jurisdictions the same question has been heard and determined in numerous cases. That there is a conflict of opinion is not surprising. To determine the issues in the present case we believe that prior decisions of this court will afford an adequate guide to decisions here. In Blummer v. Scandinavian Am. State Bank, 169 Minn. 89, 210 N. W. 865, plaintiff owed $1,500 secured by mortgage upon his farm. The interest thereon up to August 14, 1920, amounted to $61.89. The mortgage had been negotiated through the defendant bank. On that day plaintiff issued his check drawn upon another bank in the sum of $1,561.89, the total amount of his mortgage debt and interest thereon to that date. The bank gave him a receipt to the effect that the proceeds of the check should be used to pay the mortgage, which would mature on December 1, 1921. The instrument also contained the bank's promise to pay plaintiff interest at six per cent until the money was actually paid to the mortgagee. No provision was made by plaintiff for paying interest from August 14, 1920, to December 1, 1921. The bank, without plaintiff's knowledge, executed a certificate of deposit in the usual form maturing December 1, 1921, and bearing interest at six per cent. Across the end of the instrument there were written these significant words: "To pay R. E. loan * * * Loan No. 467." The instrument was kept amongst the files in the bank. Plaintiff did not expect a satisfaction of the mortgage until maturity thereof, and he told the officer of the bank with whom he dealt that he would leave the money until the mortgage became due, at which time the money was to be used to pay the mortgage. There, as here, defendant bank was closed during the interim. Plaintiff sought and obtained a preference. This

court on appeal sustained the recovery upon the theory that the money was in fact a trust fund, i. e. that it was placed with defendant to pay the mortgage and for that purpose alone; that the title to the money remained in plaintiff; that the language of the receipt and the notation on the certificate of deposit tended to show and establish plaintiff's claim to priority. The court said, 169 Minn. 91:

"The money having been received for the particular purpose the relation of debtor and creditor did not exist but rather that of trustee and *cestui que trust*. The bank had no title to the money. Its obligation was defined by the terms of the agreement. It was a special deposit. The fact that the money was mingled with other funds is not controlling. He is a preferred creditor. Plaintiff must have his property or its equivalent." (Citing numerous cases.)

In Village of Monticello v. Citizens State Bank, 180 Minn. 418, 230 N. W. 889, a case very similar to the instant one, a preference was sustained. In that case one Brasie was a long time settler of the Monticello community and was engaged in business there. He proposed in writing to the three banks located in the village that he wished to create a trust fund for the erection of a public library building in the village for the use and benefit of its inhabitants by depositing for that purpose $10,000, one-third thereof in each of said banks. He thought the price of labor and materials was too high to erect the building under those conditions and suggested that the banks might be willing to augment the fund by paying six per cent annual interest, compounded semi-annually, upon the funds intrusted to said banks while awaiting a more favorable time for its construction. Prior to the arrival of that time the defendant bank was closed. Preference was sustained. The Blummer case, 169 Minn. 89, 210 N. W. 865, was cited with approval and as authority for sustaining the decision reached. The case of Duncan v. Anderson, 120 Okl. 194, 250 P. 1018, was also cited. In the Monticello case, 180 Minn. 418, 421, *et seq.*, 230 N. W. 889, prior cases of this court, such as Hjelle v. Veigel, 169 Minn. 173, 210 N. W. 891, and cases from other jurisdictions are reviewed. The American Law Institute in its Restatement, Trusts (Tent. Draft No. 1) on p. 41, summarizes the applicable law in this fashion:

"If one person pays money to another, it depends upon the manifested intention of the parties whether a trust or a debt is created. If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created."

Obviously, in the instant case, the so-called trust agreement that Mr. Swenson prepared is faulty. It bears the earmarks of having been prepared by a layman. But there can be no reasonable doubt that Mr. Swenson thought he was establishing a trust. That was his purpose. How otherwise could he bring about the large accumulation contemplated and provided for in the agreement? The corporate existence of the bank might not extend during the full time provided in the agreement. Interest rates too might fluctuate. As a practical banker he made provision for such and other contingencies by providing in the trust agreement that if the bank "should find it impracticable or impossible to carry out the conditions aforesaid, the said fund with accumulations shall at once become due and payable to said city of Canby." The instrument also provides that if it should be found "impossible to secure" interest at the specified rate of four per cent, then the city should "deposit said fund and accumulations at the best rate of compound interest obtainable."

The language used to reach this result is not what an able lawyer would employ. The case illustrates the dangers involved where a layman seeks to establish a trust. But courts have for their object and purpose the accomplishment of what is obviously the intention of the parties. We should not, nor do we, look for loopholes to destroy what men have honestly sought to accomplish, nor do we by strict interpretation permit the overturning of written instruments, even where faultily drawn, if from the same and from the surrounding circumstances we can find the clear intent and purpose of those who enter into such agreements.

Defendants earnestly contend that the payment of interest is in and of itself an admission that the money was left with the bank to be by it used the same as other deposits and that as such the relationship of debtor and creditor arose. Generally speaking this

is true, but, as has already been said, it is not necessarily conclusive. In the case of Village of Monticello v. Citizens State Bank, 180 Minn. 418, 420, 230 N. W. 889, 890, this court said:

"It is to be admitted that the agreement to pay interest is indicative of the relation of lender and borrower and so is the use of the word 'deposit,' which ordinarily means that the moneys deposited are to become a part of the general assets of the bank and used as such, making the depositor a general creditor of the bank. But the use of a word or phrase in a lengthy agreement is not determinative. The whole agreement, its purpose and scope should be considered."

There can be no doubt that if Mr. Swenson had turned over a bond having maturity of 110 years with instructions to the bank that it collect the interest and reinvest the same to accomplish the same purpose the resulting arrangement would constitute a trust. Money intrusted by one to another, even where interest is to be paid or contributed, does not necessarily mean a loan. "It is theoretically possible of course for a trustee to pay 'interest' from his own funds, but in the absence of a clear agreement to that effect such intention would not be found." Am. Law Inst. Restatement, Trusts (Tent. Draft No. 1) pp. 41, 42. At the time of this trust agreement interest at four per cent per annum, compounded semiannually, was a low rate. The trustee could readily find room for investment upon that basis and still leave an income in excess thereof to reimburse himself for the service rendered. It is not an unusual thing for trust companies, admittedly acting as trustees, to use such funds for investment and reinvestment without thereby in any way limiting the trust agreement or the rights of the beneficiary. A trust still remains. The question is one of intent.

In the Monticello case, 180 Minn. 418, 230 N. W. 889, the trust was to continue over an uncertain period. The contingency in that respect was that the deposited fund should remain [180 Minn. 419] "until that time when it, with the interest additions thereto, together with the recession of the cost of labor and material, will fully pay the entire cost of the building." In substance and effect

that case and the instant case are the same. Here the bank was to pay or "contribute" at the rate of four per cent per annum, compounded semi-annually for a definite period of time, or, if the bank at any time found it impracticable on its part to carry on pursuant to the agreement, to terminate its responsibility at its own discretion. There is nothing indicating a relationship of debtor and creditor except the provision for payment of interest. If the donor of the gift had provided that the bank as trustee should invest the fund in such securities as it deemed best, and that such securities were to bring an income of at least four per cent per annum, compounded semi-annually, there would be no difficulty in upholding the conclusion reached by the court below. Taking up the so-called trust agreement here involved and examining the same from its four corners, it is not difficult to find that that is exactly what the donor intended. The bank's acceptance of the fund and the manner in which this account was entered upon its books, "in trust for said city," and the further and even more significant fact that this was the only account of this nature or type, combine to establish that a trust was in fact intended—not the relationship of debtor and creditor.

Of value here although not directly in point is the case of Genesee Wesleyan Seminary v. U. S. F. & G. Co. 247 N. Y. 52, 159 N. E. 720, 56 A. L. R. 964.

Defendants devote considerable space in their brief to the statute against perpetuities and unlawful accumulations. 2 Mason Minn. St. 1927, § 8090(6). That point was not raised in the court below nor has it been here as there is no assignment of error directed thereto. Assuming that this is now a subject for discussion and as such open to defendants, 2 Mason Minn. St. 1927, § 8090(7), expressly provides the exception, the trust here involved having for its object a charitable aim. The agreement cannot be construed otherwise.

Counsel for defendants in his brief has this to say:

"If the direction for an accumulation is not a condition precedent to the vesting of the gift, the provision for accumulation does not render the gift invalid. But where the accumulation is a condition

precedent to the vesting of the gift in charity, and the period of accumulations transgresses the rule against remoteness, the gift is void *ab initio*. 2 British Ruling Cases 882; MacKenzie v. Jersey City Presbytery, 67 N. J. Eq. 652, 61 A. 1027, 3 L.R.A.(N.S.) 227; Almy v. Jones, 17 R. I. 265, 21 A. 616, 12 L. R. A. 414, and notes 90 Am. D. 105, Ann. Cas. 1913A, 139; Brooks v. Belfast, 90 Me. 318, 324, 38 A. 222."

In view of the conduct of the trial, it is obvious to us that the only issue in the case as tried in the court below and the only theory relied upon by defendants was that the deposit was a general one instead of a trust. The commissioner allowed the claim as a general claim but refused preference. The contest before the trial court was limited strictly to the preference. If plaintiff was entitled to the money as a general creditor, it seems difficult to arrive at any other conclusion than that plaintiff was also the owner of the claim if it were to be declared a preference.

The question of *ultra vires* as between Mr. Swenson, the donor, and the Bank of Canby as trustee has not been raised and therefore not considered.

Further comment is not deemed necessary. It follows that the order appealed from should be and is hereby affirmed.

*STONE, Justice* (dissenting).

Agreeing in what is said in the second subdivision of the opinion, I must yet dissent from the decision.

In cases of contract it is not always true that the intention of the parties governs. It is the intention *manifested* by the expression of the parties of their mutual assent that is the determinative thing. It is doubtless true that the parties here intended that the transaction should have some of the aspects of a trust. But that is of no effect if they actually and inescapably attached to the contract other attributes which prevent it from being a trust. To me, the writings which integrated the contract plainly and imperatively imposed upon the bank the obligation to repay the principal of the deposit with interest. It is elementary that "a debt is not a trust." Restatement, Trusts, § 15. Mr. Justice Olson quotes

part of comment "g" under that section. I beg to add the rest of the paragraph:

"If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created."

It is essential to a trust that the legal title be put in one, the trustee, for the benefit of another, the beneficiary. "A trust implies two estates or interests,—one equitable, and one legal; * * *. Absolute control and power of disposition are inconsistent with the idea of a trust." Hospes v. Northwestern M. & C. Co. 48 Minn. 174, 192, 50 N. W. 1117, 1119, 15 L. R. A. 470, 31 A. S. R. 637. Is it not plain that here the bank was given the absolute control of the money and power of disposition? It became part of the general funds of the bank. Mr. Swenson retained no title to it, and the city of Canby got none. All the latter had was the power to enforce the bank's obligation, that of a contract debtor, to repay the money, with interest.

The case, it seems to me, is precisely the same as though Mr. Swenson had deposited the money and had taken a certificate of deposit in the usual form, reciting that the money was taken in trust but expressing the obligation of the bank to repay it to named beneficiaries at some stated time in the future. The intention to create a trust would be expressed. But it would be a very *general* statement, wholly inconsistent with, and therefore not controlling against, the particular and specific obligation of repayment.

I am aware that this view runs counter to many of our decisions, particularly Village of Monticello v. Citizens State Bank, 180 Minn. 418, 230 N. W. 889. But I have been forced to the opinion that we have gone altogether too far in ignoring the fundamental fact that "a debt is not a trust." Where an absolute debt is created, we overlook a fundamental factor of decision if we hold that, notwithstanding, the transaction results in a trust.