CAMBRIDGE GAS COMPANY *et al.* v. F. O. LAMB, *Receiver.*

(No. 8263)

Submitted February 5, 1936. Decided March 3, 1936.

*W. E. R. Byrne* and *Mohler, Peters & Snyder,* for appellants.

*Price, Smith & Spilman* and *Jackson D. Altizer,* for appellees.

MAXWELL, JUDGE:

This suit was instituted in the circuit court of Kanawha County by Cambridge Gas Company and others against F. O. Lamb, receiver of the Charleston Trust Company, a corporation, an insolvent banking institution, for the purpose of having a certain deposit in the savings department of said trust company at the time it discontinued business, May 27, 1933, declared to be a trust fund. From a decree sustaining the prayer of the bill, the receiver has appealed.

On the first of December, 1928, the Cambridge Gas Company sold $25,000.00 par value of its seven per centum cumulative perferred stock, retirable in stipulated annual amounts from 1931 to 1936, inclusive. On the following day, the gas company entered into a written agreement with the Charleston Trust Company, reciting the fact aforesaid, and further, that it was the desire of the gas company "to establish a sinking fund for the retirement of said preferred stock according to its terms and tenor, and said Trust Company has agreed to act as trustee of said fund as hereinafter provided." It was stipulated in the agreement that the gas company should make specified monthly deposits "to its credit in a savings account in said Trust Company." The trust company agreed "that it will, on June 1st and December 1st, of each year, pay to Cambridge interest at three per cent (3%) on all sums on deposit in said account for the six months immediately preceding said dates, respectively." The contract further provided that the sums so deposited should be held for the benefit of the holders of said pre-

ferred stock, and that upon the retirement thereof, the remainder of such sums on deposit in the trust company should be forthwith paid to the gas company. Sums aggregating $12,623.51 were deposited under this contract. Of that aggregate, there was withdrawn by the gas company $153.15 for its use and $5,000.00 for partial retirement of preferred stock. When the bank suspended business, there was a balance in the account of $7,470.36. On the 23rd of June, 1931, the trust officer of the trust company wrote a letter to the president of the gas company reminding him that there had been a falling off of the deposits which were to be made in "the Sinking Fund your Company established by written Agreement, dated December 2, 1928 with the Charleston Trust Company, as Trustee, for the retirement of the preferred stock of the Cambridge Gas Company." In said letter, the trust officer further stated that "unless the necessary deposits to bring this fund up to date are made by the first of July, this bank, as sponsor for the sale of considerable of the preferred stock, will have to bring the necessary legal proceeding to enforce the rights of the preferred stockholders." The gas company undertook to meet the requirement of monthly installments by arranging with a purchaser of gas, which it (Cambridge) was producing, to make deposits in the aforementioned savings account with the trust company. But that arrangement was subsequently abandoned when the affairs of the gas company became more involved.

On this background of facts, the precise and narrow question for judicial determination is whether the sum of $7,470.36, balance of the aforesaid deposits, is a trust fund which must be paid in preference to the accounts of depositors, or whether it ranks merely as a savings account having no preference over other similar accounts.

Are we dealing with a trust or a debt?

The principle of law here to be considered is thus broadly presented in Am. Law Inst. Restatement of the Law of Trusts, p. 42, sec. 12: "If one person pays money to another, it depends upon the manifested intention of the parties whether a trust or a debt is created. If the

intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created.

"The intention of the parties will be ascertained by a consideration of their words and conduct in the light of all the circumstances. * * *

"If there is an understanding between the parties that the person to whom money is paid shall pay 'interest' thereon (at a fixed or at the current rate, and not merely such interest as the money, being invested, may earn) the relationship is practically always a debt and not a trust. Interest is paid for the use of the money, and if the payee pays interest he is, in the absence of a definite understanding to the contrary, entitled to use the money for his own purposes. It is theoretically possible, of course, for a trustee to pay 'interest' from his own funds, but in the absence of clear agreement to that effect such an intention would not be found."

Though the decisions involving similar problems are diffiicult of reconciliation as to the results reached, they nevertheless generally recognize the controlling effect upon a given situation of the intent of the parties involved. But in determining the intent they differ widely as to the effect to be given to a requirement of payment of interest by the holder of the fund. In cases where trusts have been declared, though the depositaries were under contractual obligation to pay interest on the fund, the courts have subordinated such requirement to other outstanding provisions of the contract, and have declined to negative the trust theory merely because of the seemingly inconsistent requirement that the trustee pay interest for the privilege of holding the fund. The view has been taken that the most that could be said of such interest payment requirement was that it constituted a bad bargain on the part of the depositary or trustee. In this line of cases are the following: *Newsom* v. *Acacia Mut. Life Association,*

102 Fla. 567, 136 So. 389; *Duncan v. Cady*, 109 Fla. 491, 149 So. 11; *City of Canby v. Bank of Canby*, 192 Minn. 571, 257 N. W. 520; *Blummer v. Bank*, 169 Minn. 89, 210 N. W. 865; *Gillett v. Bank*, (Ia.) 258 N. W. 99; *Village of Monticello v. Citizens' State Bank*, 180 Minn. 418, 230 N. W. 889. On the other side, among the cases which lay special emphasis upon interest payment requirements by the depositary as being inconsistent with a trusteeship, are the following: *Fulton v. Escanaba Paper Co.*, 129 Ohio St. 90, 193 N. E. 758; *National Surety Co. v. Morris*, 34 Wyo. 134, 241 P. 1063, 42 A. L. R. 1290; *McNulta v. West Chicago Park Com'rs.*, (C. C. A.) 99 Fed. 900; *Board of Education v. Union Trust Co.*, 136 Mich. 454, 99 N. W. 373; *McDonald v. Fulton*, 125 Ohio St. 507, 182 N. E. 504, 83 A. L. R. 1107; *Doty v. Ghinger*, 166 Md. 426, 171 Atl. 40; *Missouri Mutual Ass'n. v. Holland Banking Co.*, 220 Mo. App. 1256, 290 S. W. 100; *Old Colony Trust Co. v. Puritan Motors Corp.*, 244 Mass. 259, 138 N. E. 321; *Swan v. Children's Home Soc. of W. Va.*, (C. C. A. W. Va.) 67 F. (2d) 84.

The recital in the contract between the Cambridge Gas Company and the Charleston Trust Company that the latter had "agreed to act as trustee of said fund," strongly relied on by the appellees, is not conclusive in determining the state of affairs established by the contract. The character of the relationship created by the contract must be determined by the undertakings thereof, and not by its recitals. Controlling undertakings of the contract were that the gas company would deposit to its credit in a savings account in the trust company certain funds at specified dates, and that on said deposits the trust company should pay interest at the rate of three per centum per annum, payable semi-annually. Conspicuously, it is to be noted that the fund in question was portrayed on the books of the trust company as standing to the credit of the gas company. It was not a fund standing to the credit of a trustee. The account bore all the *indicia* of a simple savings account, on the same plane with other like accounts.

In dealing with a problem such as here presented, the

courts must not lose sight of the silent parties to the controversy, though they may not be parties to the suit in court. The interested parties to whom reference is thus made are the general depositors and other simple creditors of the insolvent banking institution. To the extent that preference is given to a depositor by holding that his deposit constituted a trust relationship between him and the bank, other depositors are prejudicially affected, because the amounts of their *pro rata* recoveries will thereby necessarily be lessened. A holding that would be followed by such disastrous consequences to other persons must not be made unless the justification therefor is clearly established. Such a holding would plainly be warranted under evidence showing that the contract between the parties concerned was that the depositary, without right to use and invest the fund, should hold it intact for the beneficiary. But such preservation of intactness is not consistent with the simultaneous payment of interest for the use of the fund. It is a time-honored concept that interest represents the fair value of the use of money. Interest is compensation, allowed by law, paid by the debtor to the creditor for the privilege of using the latter's money. The payment of interest on a trust fund would mean that the depositary pays from its own resources for the right to have the custody of the particular fund, with the attendant responsibilities. It is against the ordinary customs and usages of mankind that such should be done, for it is not of the nature of men to pay for burdens. True, such might be done, but before a court should reach the conclusion that that was the intent of the parties, that purpose should appear from their contract beyond peradventure. In our judgment, intent of that kind does not appear in the contract at bar. The fact that the gas company money was dealt with by the trust company exactly as other savings accounts indicates that the trust company agreed to pay interest on the gas company's money on the theory that the trust company was to have the use of that money just as it used other savings accounts. The result was a debt and not a trust. If it had been the intent of Cambridge Company officials that its funds should

be kept separate and intact, not to be used by the trust company, that intent should have been made manifest in the contract.

The legal relationship between the parties as disclosed by their contract was not changed by their subsequent dealings. Neither the trust officer's letter of June 23, 1931, nor the collateral contract of March 15, 1933, could have any bearing on the basic contractual obligations.

It has been suggested that the Charleston Trust Company may have been willing to pay interest on this money, as a trust fund, in order that it might have the money for the purpose of building up its legal reserve. We are not favorably impressed with this suggestion because a legal reserve cannot be established in that manner. Such reserve must be of available funds, and cannot be composed in whole or in part of trust funds which must be held intact and would not be available for emergency use —the purpose for which a reserve is required. Consult Code, 31-8-16.

For the reasons presented, we reverse the decree and dismiss the bill.

*Reversed; bill dismissed.*