ANNA WALZ v. STATE BANK OF GREENWALD.[1]

December 5, 1941.

No. 32,903.

[1]Reported in 1 N. W. (2d) 375.

318

W. J. Stephens, Ahles & Ahles, and Atwood & Quinlivan, for appellant.

Guesmer, Carson & MacGregor and S. S. Smith, for respondent.

GALLAGHER, CHIEF JUSTICE.

In an action by A. Walz to recover $3,000 and interest from defendant bank, tried in the district court for Stearns county in January 1935 before the Honorable Carroll A. Nye without a jury, both plaintiff and the presiding judge died before decision of the case. By order of court, dated November 8, 1939, Anna Walz, as executrix of plaintiff's estate, was substituted as plaintiff in his stead, and thereafter, pursuant to stipulation, the case was submitted to the Honorable D. M. Cameron for decision on the transcript, exhibits, briefs, and arguments of counsel. Defendant appeals from the judgment entered pursuant to findings for plaintiff.

During the summer of 1933, Henry J. Mars, J. B. Free, and Matt Worms formed a corporation known as the Math. Pitzl Brewery, Incorporated. The company entered into a contract with the representative of the estate of the late Math. Pitzl for the purchase of certain brewery property located in New Munich, Minnesota, and operated by Pitzl prior to the advent of prohibition. It planned to remodel the building and to install the necessary machinery and equipment for the manufacture of beer.

Walz had been employed by Pitzl as brewmaster in a brewery in Saskatchewan, Canada. Through the efforts of Pitzl's widow, Walz came to New Munich in August 1933 for an interview with Mars, Free, and Worms. As a result of the interview, Walz agreed to supervise the installation of the machinery and the remodeling of the brewery and to act as brewmaster when the company began operating. He was to be paid $300 per month. There was some talk about Walz investing money in the enterprise, but nothing definite seems to have been agreed upon. Walz

wished to give his Canadian employer a month's notice before leaving, so he returned to Canada. A few days after his return he had the Canadian Bank of Commerce send the following letter to defendant:

"The Cashier,
Greenwald State Bank,
Greenwald, Minn.
Dear Sir:

On behalf of Mr. A. Walz we enclose our draft on New York for $3,000.00 payable to Pitzl's Brewery Company. This draft is to be deposited with the Brewery for credit of Mr. Walz and is sent to the Brewery on the understanding that it is subject to his (Mr. Walz's) withdrawal at any time.

Yours truly,<br>V. L. Macilory, Manager."

Enclosed with the letter was a draft on a New York bank for $3,000 payable to the brewing company.

Defendant contends that Walz sent the draft to the brewing company in furtherance of his agreement to invest, and there is testimony of Walz in the record supporting that contention. However, Walz also testified that he sent the draft "to make it sure that I be down here," and "to show them I meant business and that I got the money to invest when I wanted to." The foregoing demonstrated the confused state of the record in regard to the purpose of Walz in sending the draft to the brewing company. At any rate, the letter was received by the defendant bank about August 9, 1933, and read by its cashier, Mr. Wurst. The following day Mars and Free called at the bank and were handed the letter and draft. There was some testimony to the effect that Free remarked to Mars in the presence of Wurst that they "could not use that money," although Wurst denies that he heard it, and Free claims that his reason for making the remark to Mars was that he wanted to see the money retained for the purpose of making the monthly payments on the brewery's property. Neverthe-

less, the draft was cashed at the bank and the proceeds credited to the brewing company's account. Before deposit of the draft the credit balance of the company was only $83.05. Subsequently, the money was all checked out, mainly, it appears, for work in connection with the renovation of the brewery. On September 14, 1933, the account was overdrawn.

The theory of plaintiff is that a trust was created and that defendant, with actual knowledge of the trust character of the property, acted in bad faith toward plaintiff by aiding the brewing company to misappropriate the trust property. Defendant claims that the relationship established between the brewing company and Walz was that of debtor-creditor. The trial court found all the allegations of plaintiff's complaint to be true; that plaintiff retained a special property in the draft; and that the bank in disobedience of the instructions contained in the letter sent to it converted the plaintiff's property.

The general principles to be applied are undisputed. Whether a debt or trust was created depends upon whether the manifested intention of Walz was that the brewing company should use the proceeds of the draft as its own, being under a mere personal liability to repay its amount on Walz's demand; or whether the manifested intention was that the draft or its proceeds should be segregated and not used by the brewing company. 1 Scott, Trusts, § 12.2, pp. 86, 91, 92; City of Canby v. Bank of Canby, 192 Minn. 571, 257 N. W. 520; Handle v. Real Estate-Land T. & T. Co. 316 Pa. 116, 173 A. 313. If the manifested intention was that the brewing company was to return the identical draft at the request of Walz, a bailment rather than a debt would result. Hjelle v. Veigel, 169 Minn. 173, 210 N. W. 891.

We agree with the trial court that the relationship must depend upon the construction of the letter sent by the Canadian Bank of Commerce for Walz to the defendant; but it seems to us that the letter is susceptible of only one reasonable construction, and that is that the brewing company was made the debtor and not the trustee or bailee of Walz. The draft was described in the

letter and was made payable to the brewing company. It was not to be held by the bank but was to be turned over to the brewery. More important still, the draft was to be "deposited with the brewery for *credit* of Mr. Walz." (Italics ours.) "Credit" is defined in 1 Bouvier, Law Dictionary (Rawle's 3d Rev.) p. 725, as "a debt due in consequence of a contract of hire or borrowing of money." According to business usage, the word connotes no more than a chose in action. School Directors of Pelican v. School Directors of Rock Falls, 81 Wis. 428, 51 N. W. 871, 52 N. W. 1049; Mountain State Motor Car Co. v. Solof, 97 W. Va. 196, 124 S. E. 824. Generally, the word means "a sum credited on the books of a company to a person who appears to be entitled to it." Coons v. Home L. Ins. Co. 291 Ill. App. 313, 318, 9 N. E. (2d) 419, 421. It is said that it "requires a debtor and creditor relation." In re Ford (D. C.) 14 F. (2d) 848, 849. Thus the phrase "deposited with the brewery for credit of Mr. Walz," especially when taken in conjunction with the fact that the draft was made payable to the brewery, means that the brewery might cash the draft and credit the proceeds to Walz, thereby becoming Walz's debtor in the amount of the draft.

That there is nothing in the letter precluding the brewery from using the proceeds of the draft as its own is patent, but plaintiff contends that the letter should be construed as requiring the brewery to hold the draft and not the proceeds and to return the draft and not the proceeds at Walz's request. The word "it" as used in the clause reading, "and is sent to the brewery on the understanding that *it* is subject to his (Mr. Walz's) withdrawal at any time," is said to refer to the draft. As a matter of grammar, this is correct, but the letter must be reasonably construed as a whole. The whole agreement, together with its purpose and scope, should be considered. City of Canby v. Bank of Canby, 192 Minn. 571, 257 N. W. 520. If the brewing company was to be allowed to cash the draft, and the reasonable construction is that it was, then the word "it" must, we think, refer to the "credit" Walz had with the brewery and not to the draft itself,

because the draft after being cashed would not be in the company's possession. In other words, Walz could withdraw that credit at any time, but it was expressly only a "credit" and not a right *in rem*. He was by the terms of the letter relying on the personal obligation of the brewing company. The plain purport of the letter is that only a debtor-creditor relation was established. That being so, the theory upon which plaintiff's right to recover is based fails.

The judgment appealed from is reversed and judgment ordered for defendant.

