UNITED STATES of America, Appellee,

v.

Richard Norman SCHAFFER, Appellant.

No. 76–1014.

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1976.

Decided July 26, 1976.

Rehearing Denied Aug. 20, 1976.

Thomas M. O'Shea, St. Louis, Mo., for appellant.

Ronald E. Jenkins, Sp. Atty., U. S. Dept. of Justice, St. Louis, Mo. and Donald J. Stohr (former U. S. Atty., effective May 15th Barry A. Short, U. S. Atty.), St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, LAY and HENLEY, Circuit Judges.

PER CURIAM.

Defendant Richard Norman Schaffer has taken a timely appeal from his conviction by a jury on each count of an indictment charging in Count I conspiracy with Richard Dean Trotter to use extortionate means to collect an extension of credit, and in Count II, of actually using such means, all in violation of 18 U.S.C. §§ 894 and 2. Defendant was sentenced to one-year imprisonment on Count I, with suspended sentence on Count II.

Defendant Schaffer for reversal relies upon the following asserted errors committed by the trial court:

I. Denial of defendant's motion for dismissal of the indictment.

II. Denial of full response to motion for bill of particulars.

III. Denial of constitutional right to confront witnesses against him.

IV. Denial of motions for acquittal.

Defendant's contentions lack merit. We affirm the conviction for the reasons hereinafter set forth.[1]

No elaborate statement of the facts is required to dispose of this appeal. James P. Burgess was engaged with Trotter in some gambling operations which proved unprofitable. Trotter late in 1973 paid off the losses. Burgess' share of the losses was $2300. In December 1973 Burgess borrowed $1200 additional from Trotter. Trotter advanced money to Burgess from time to time without taking evidence of the debt or charging interest. In December 1973 Burgess gave Trotter his check for $3500, postdated January 15, 1975, to show some evidence of the debt. By July 1975 Trotter succeeded in collecting only about $500 on the debt. He then presented the check for payment, which was refused. On July 24, 1975, Trotter advised Burgess that he would definitely get someone to collect the debt. Thereafter Burgess received phone calls from Schaffer wherein violence was threatened if payment on the Trotter debt was not made. Such threats were reported to the FBI. Some phone calls were recorded. At a meeting attended by Burgess, Schaffer and Trotter, threats were made and Schaffer displayed a gun holster.

We shall now discuss the asserted errors in the order hereinabove stated:

## I.

Defendant's motion to dismiss the indictment is based on three counts: (1) No federal jurisdiction exists as only an intrastate transaction is involved. (2) Section 894 only reaches loan-sharking and the loan here made does not fall in that category. (3)

The indictment is couched in language so indefinite that defendant cannot properly prepare his defense and avoid double jeopardy.

It is now well established that § 894 reaches intrastate transactions and that Congress has the constitutional power to reach such transactions. *Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); *United States v. Andrino*, 501 F.2d 1373, 1377–78 (9th Cir. 1974).

Defendant's contention that § 894 applies only to loan-sharking types of loans has likewise been consistently rejected. Section 894 makes unlawful use of "extortionate means to collect or attempt to collect any extension of credit." The statute, 18 U.S.C. § 891, defines "to extend credit" as "to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred."

The case law is conclusively against defendant's argument. As noted by the Third Circuit:

> * * * [T]he federal crime relates to "extortionate credit transactions," "however they may arise," * * * and the Act recites express congressional findings that "*extortionate credit transactions* are characterized by the use, or the express or implicit threat of the use, of violence or other criminal means to cause harm to person, reputation, or property as a means of enforcing repayment." Thus, the very approach of the Act is to define extortionate credit transactions in terms of this express finding rather than imposing a requirement that the prosecution prove each of the elements of a loan shark transaction qua loan shark transaction. (Footnote omitted.)

*United States v. Keresty*, 465 F.2d 36, 40–41 (3d Cir.), *cert. denied*, 409 U.S. 991, 93 S.Ct. 340, 34 L.Ed.2d 258 (1972). *See also United States v. Andrino, supra* at 1376–77; *Unit-*

---

1. Richard Dean Trotter was jointly indicted, tried and convicted. His appeal has been dismissed upon his motion.

ed States v. Annerino, 495 F.2d 1159, 1164–66 (7th Cir. 1974); *United States v. Briola*, 465 F.2d 1018, 1021 (10th Cir. 1972), *cert. denied*, 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed.2d 688 (1973).

■ Defendant's contention that the indictment fails to meet the requirements of Fed.R.Crim.P. 7(c) lacks merit. In *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974), the Court holds:

> Our prior cases indicate that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.

The indictment involved in our present case recites the amount and approximate date of the extension of credit, the nature of the threats, and the period during which extortionate means were employed, the name of the victim, and the violation of § 894.

*United States v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970), relied upon by defendant, is clearly distinguishable and does not support defendant's contention. Additionally, the Government, pursuant to court order, in its supplemental response to bill of particulars set out the specific times when the threats were conveyed and allowed defendant to listen to the tapes of these conversations. We hold the indictment adequately informed the defendant of the charges against him and enabled him to plead former jeopardy to a subsequent prosecution for the same offense.

## II.

■ The trial court did not abuse its discretion in denying a full response to the bill of particulars. Defendant was afforded ample information to permit him to meet the Government's charges.

## III.

■ The Government in its opening statement indicated that Haggard, who was associated with Burgess in some gambling operations, would be called as a witness by the Government. He was not called. There is no constitutional right of confrontation here involved since Haggard was not called as a witness. Defendant was aware of Haggard's address and could have called him as a witness if he had so desired. No prejudice resulted to the defendant by reason of the Government's failure to call Haggard as a witness.

## IV.

■ A careful review of the entire record satisfies us that there is ample evidence to support the guilty verdict returned by the jury. No error was committed in overruling defendant's motions for acquittal.

The judgment appealed from is affirmed.