UNITED STATES of America, Appellee,

v.

**Roy L. McMAHAN, Appellant.**

**No. 84–1082.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1984.

Decided Sept. 28, 1984.

Rehearing Denied Nov. 8, 1984.

James R. Wyrsch, Koenigsdorf, Kusnetzky & Wyrsch, Kansas City, Mo., for appellant.

Robert G. Ulrich, U.S.Atty., J. Whitfield Moody, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and DUMBAULD,* Senior District Judge.

LAY, Chief Judge.

Roy L. McMahan appeals from his conviction, under 18 U.S.C. §§ 894(a)(1) and (2), for using extortionate means to collect an extension of credit.

After a jury trial, McMahan was convicted on two counts of a four-count indictment. On appeal, he asserts that (1) the government failed to prove that McMahan extended credit; (2) a material prejudicial variance, or constructive amendment, of the indictment occurred as a result of the evidence presented at trial; (3) the government withheld information regarding one of its witnesses; (4) one of the jurors did not disclose his true residence during voir dire; and (5) the sentence imposed on him is unconstitutional under the Eighth Amendment. McMahan alternatively re-

quests amendment of his presentence report.

## I. Extension of Credit

McMahan's principle contention on appeal is that the government failed to prove that he extended credit, as required by 18 U.S.C. § 894 (1982).

McMahan is a Kansas City auto dealer and owner of several used car auction lots. James Crouch is a used car wholesaler in Kansas City who was having serious financial problems in early 1979. On May 3, 1979, McMahan gave checks to Crouch in the amount of $7,900. The testimony was not entirely clear or consistent, but the jury could reasonably have found that McMahan loaned Crouch the $7,900 to enable Crouch to pay off bank loans he had on two cars. The understanding between McMahan and Crouch was that Crouch would sell these cars through McMahan's auto auction. Upon the sale, McMahan would recover the principal of the loan, in addition to one-half of the profit realized by Crouch. However, that same day, Crouch sold the cars without going through McMahan's auction. Crouch then wrote checks to McMahan in the amount of $7,900 as a repayment of the loan; the checks were not good and the loan remained outstanding.

The jury also might have believed Crouch's testimony that a $7,500 check which he gave McMahan in mid-May, 1979, was a "hold" check. By accepting the check and agreeing to hold it until Crouch had sufficient funds to pay it, McMahan allowed Crouch to defer payment on the debt owed. This would create a credit transaction even if the original transaction did not involve an extension of credit. The jury was instructed that "extension of credit" means "to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred."

* The HONORABLE EDWARD DUMBAULD, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

■ Accepting a check is sufficient to satisfy the statutory requirement that there be an extension of credit. Section 891 defines extension of credit very broadly and the application of section 894 has been broadly construed. *United States v. Dennis,* 625 F.2d 782, 802–03 (8th Cir. 1980); *United States v. Schaffer,* 539 F.2d 653, 654 (8th Cir.1976); *United States v. Horton,* 676 F.2d 1165, 1171 (7th Cir.1982), *cert. denied,* 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431 (1983); *United States v. Mase,* 556 F.2d 671, 673–74 (2nd Cir.1977), *cert. denied,* 435 U.S. 916, 98 S.Ct. 1472, 55 L.Ed.2d 508 (1978). Credit is a chose in action. *See Walz v. State Bank of Greenwald,* 211 Minn. 317, 1 N.W.2d 375, 377 (1941); 21 C.J.S. *Credit* (1940). The writing of a check is a grant of a chose in action to the payee. *See* U.C.C. § 3–802. Accepting a check as payment is an extension of credit because the payee or indorsee obtains a chose in action. If the payee or indorsee does not wish to extend any credit, he or she can insist on a cash payment. *See, e.g.,* U.C.C. § 2–702. In this case, the jury reasonably could have found that McMahan accepted payment from Crouch in the form of one or more checks and, in so doing, extended credit to Crouch.

The defendant relies on *United States v. Boulahanis,* 677 F.2d 586 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982), in arguing there was no extension of credit. However, *Boulahanis* involved defendants who attempted to extort protection payments by beating a nightclub owner and wrecking his club. *Id.* at 587. There was no underlying business transaction and no money changed hands except under duress. *Id.* In the present case, the transfers of checks were entirely voluntary. This case is quite similar to *United States v. Horton,* 676 F.2d 1165 (7th Cir.), *cert. denied,* 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431 (1982), where defendant, a heroin dealer, received bad checks and used extortionate means to attempt to collect on them. *Id.* at 1168. The court had no difficulty finding an extension of credit. *Id.* at 1171. Our examination of the record reveals substantial evidence upon which the jury might have based its finding that McMahan extended credit to Crouch.

## II. Variance or Amendment of Indictment

McMahan alleges that the evidence at trial was substantially different from that alleged in the indictment and that this constituted a prejudicial variance or constructive amendment of the indictment. First, McMahan points out that the indictment alleged a loan of "approximately $7,100.00 * * * on or about April, 1979 * * *." From the evidence at trial it appears that the actual amount involved was $7,500 and the transaction occurred in early May of 1979. Second, defendant criticizes the language of the indictment, calling it "duplicitous" and "confusing." In effect, McMahan is challenging the sufficiency of the indictment.

The Supreme Court has stated:

[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of a charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. * * It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."

*Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974) (citations omitted). *See also Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–1047, 8 L.Ed.2d 240 (1962); *United States v. Schaffer,* 539 F.2d 653, 655 (8th Cir.1976). The indictment basically tracked the language of the statute, see 18 U.S.C. § 894 (1982), and fairly informed McMahan of the charge against which he had to defend. Quite properly, defendant first raised the objection in pre-trial motions which resulted in an order by Magis-

trate Hamilton for the government to file a bill of particulars. The government complied with the order and defendant made no further requests for particularization.

■ A variance between facts alleged in the indictment and evidence offered at trial does not necessarily constitute an amendment of the indictment. *See, e.g., Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Of course, neither the prosecutor nor the trial court may constitutionally amend a federal indictment. *Ex Parte Bain,* 121 U.S. 1, 9–10, 13, 7 S.Ct. 781, 785–786, 787, 30 L.Ed. 849 (1887). However, a variance is constitutional so long as it does not deprive the defendant of due process. *See Kotteakos,* 328 U.S. at 760–62, 765, 66 S.Ct. at 1245–1246, 1248; *Berger,* 295 U.S. at 81–82, 55 S.Ct. at 630–631; *Washington & Georgetown R. Co. v. Hickey,* 166 U.S. 521, 531–32, 17 S.Ct. 661, 665, 41 L.Ed. 1101 (1897); *United States v. Crocker,* 568 F.2d 1049, 1059 (3rd Cir.1977). In this case, the variance regarding the amount in controversy and the date of the transaction was insignificant. The indictment was sufficient so as to apprise the defendant of the charges against him and to allow counsel to prepare for trial effectively.

### III. Exculpatory Evidence

■ Defendant contends that the government failed to disclose exculpatory evidence concerning its witness James Lichty. It appears that the evidence the government had did not tend to exculpate McMahan but, rather, may have provided a basis for impeachment of Lichty. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), does not require the government to provide defendants with all information it has regarding each of its witnesses. *United States v. Agurs,* 427 U.S. 97, 103–14, 96 S.Ct. 2392, 2397–2402, 49 L.Ed.2d 342 (1976). In the present case, a general request was made by defendant's counsel for all impeaching material the government had concerning any of its wit-

nesses. After McMahan's conviction, his counsel discovered that the government was investigating Lichty for possible crimes unrelated to the present case. Defendant contends that this information should have been disclosed to him.

■ The duty of the prosecutor to disclose evidence is measured "by the 'materiality' of the evidence to the question of the defendant's guilt or innocence." *Scurr v. Niccum,* 620 F.2d 186, 189 (8th Cir.1980). When a general request for disclosure is made, as in this case, the standard by which the materiality of the undisclosed evidence is measured is whether "the omitted evidence creates a reasonable doubt that did not otherwise exist * * *." *Agurs,* 427 U.S. at 112, 96 S.Ct. at 2402. The trial court, in considering defendant's motion for a new trial, specifically found that the information regarding Lichty could not have been used to develop any reasonable doubt about the guilt of McMahan. In the context of the entire record, a consideration required by *Agurs,* 427 U.S. at 112, 96 S.Ct. at 2401, this court cannot conclude that disclosure of the information regarding Lichty might have affected the outcome of the trial. *See Thompson v. State of Missouri,* 724 F.2d 1314, 1316–19 (8th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 2176, 80 L.Ed.2d 559 (1984); *United States v. Smith,* 538 F.2d 1332, 1334 (8th Cir. 1976); *United States v. Crow Dog,* 532 F.2d 1182, 1184–92 (8th Cir.1976), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977).

### IV. Voir Dire

■ After trial, McMahan's counsel interviewed members of the jury and discovered that Juror Cole, who stated during voir dire that he lived in Kansas City, Missouri, may actually reside in Leawood, Kansas. In light of this information, defendant moved for a new trial on the basis that Cole's claim of residence in Kansas City prevented counsel from fairly evaluating whether to exercise a peremptory challenge. Counsel for McMahan asserted that, had he known Cole had some connection to Johnson County, Kansas, Cole

would have been stricken. At a hearing on the motion, the trial court found counsel's claim "hard to believe" and, concluding that no actual bias or prejudice was shown, refused to grant a new trial.

The Supreme Court recently stated:

A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination.

*McDonough Power Equipment, Inc. v. Greenwood,* — U.S. —, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984).

*McDonough* held that the complaining party first must "demonstrate that a juror failed to answer honestly a material question on *voir dire,*" *id.* at 850; and then must "show that a correct response would have provided a valid basis for a challenge for cause." *Id.* Although *McDonough* was a civil case, we believe the same principle would apply to a criminal trial.

Testimony by Cole at a hearing on defendant's motion indicated that he has an honest belief that he is a resident of Kansas City, Missouri. The trial court specifically found that Cole "honestly and straightforwardly responded to all questions asked of him during *voir dire* * * *." Under the *McDonough* test, defendant is not entitled to a new trial.

As a general rule, the decision whether to grant or deny a motion for a new trial lies within the discretion of the district court. *McDonough,* 104 S.Ct. at 850. The trial court is in the best position to evaluate the relevance of undisclosed evidence or later-discovered facts and consider their impact on the outcome of the trial. In this case, the trial court gave careful consideration to defendant's motions and determined that a new trial was not justified. On the basis of the record, the district court did not abuse its discretion.

## V. Sentencing

McMahan was sentenced to serve fifteen years in prison and pay a fine of $5,000.[1] In light of the lesser penalties imposed on his co-defendants, McMahan argues that his punishment violates the Eighth Amendment because it is not proportional to the crime.

In some cases the sentence may be so disproportional to either the crime or the defendant's background that it is unconstitutional. However, in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983), the Supreme Court noted: "Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." In general, this court will not review a sentence which is within the statutory limits and was imposed in accordance with constitutional and procedural requirements absent gross abuse of discretion by the district court or a failure to exercise any discretion. *United States v. Rosandich,* 729 F.2d 1512 (8th Cir.1984); *United States v. Russell,* 724 F.2d 725 (8th Cir.1984); *United States v. Hollis,* 718 F.2d 277, 279 (8th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984). In the present case, the trial court carefully considered all relevant factors prior to pronouncing sentence. At the sentencing hearing, the court fully explained the reasons for the sentence. There was neither an abuse nor a failure to exercise discretion.[2]

## VI. Conclusion

The record contains substantial evidence to support the jury's finding that there was

1. The maximum punishment for a violation of § 894 is twenty years in prison or up to $10,000 in fines or both. 18 U.S.C. § 894(a) (1982).

2. McMahan also complains about the presentence report which the court considered before determining his sentence. Defendant does not claim that the report is inaccurate, but simply feels that portions of its are misleading. This matter was raised at the sentencing hearing and fully considered by the district court. Apparently, defendant is claiming that the report was not properly amended or retyped to conform with

an extension of credit. The variance between the indictment and evidence at trial was not significant and did not amount to a constructive amendment. There was no denial of due process. The motions for a new trial were properly denied because the evidence regarding Lichty was not material and Juror Cole answered the voir dire questions honestly. The sentence imposed by the district court on McMahan was not disproportionate and was within the sound discretion of the court. Furthermore, we have reviewed McMahan's claims that the district court erred in ruling on various matters of discovery and evidence.[3] These rulings were within the discretion of the trial court and, upon examination of the record, we find no abuse of that discretion. Accordingly, the judgment of the district court should be affirmed.

the agreements reached during the hearing. Review of the transcript of the hearing and the report as it presently stands does not support this allegation. In any event, this is a matter more properly addressed to the district court and the probation office, not the court of appeals.

3. McMahan sought to discover the address and presentence report of one of his co-defendants who had become a government witness. In addition, at trial, McMahan wanted to cross-examine Crouch regarding a felony conviction which was more than ten years old. *See* Fed.R. Evid. 609(b). He also wanted to cross-examine another government witness about an alleged sexual assault. Finally, McMahan complained that it was improper to allow the government to cross-examine him regarding death threats to witnesses he was alleged to have made.