**UNITED STATES of America, Plaintiff,**

v.

**Mark WHITEHURST, a/k/a Swede, Defendant.**

No. 87–46.

United States District Court,
D. Minnesota,
Third Division.

July 6, 1987.

Joseph T. Walbran, Asst. U.S. Atty., Minneapolis, Minn., for the U.S.

Bruce Hanley, Minneapolis, Minn., and John Remington Graham, Brainerd, Minn., for defendant.

## ORDER OF REMOVAL AND DETENTION

JANICE M. SYMCHYCH, United States Magistrate.

The above matter was before the undersigned on July 2, 1987, upon motion of the United States for removal, pursuant to Fed.R.Crim.P. 40(a), and for an order of detention, pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3142(e). Defendant was present and represented by Bruce Hanley, Esq. and John Remington Graham, Esq. Assistant United States Attorney Joseph T. Walbran represented the United States. After hearing and argument, the court is convinced that both motions should be granted, for the following reasons.

## I.  REMOVAL

Rule 40(a) of the Federal Rules of Criminal Procedure provides the exclusive mechanism for transfer of a criminal defendant to the forum district when he has been arrested in a different district. Here, the United States grand jury in the Northern District of Alabama, on February 22, 1985, returned its indictment against "Mark Whitehurst also known as Swede." Defendant here, whose true name is Mark Kenneth Foster, was arrested pursuant to that indictment in the District of Minnesota on June 29, 1987.

Because the prosecution here is pursuant to indictment, probable cause for the offense is established, and the government need not pursue that issue at the Rule 40 hearing. The only issue upon removal, then, is whether the arrestee is one and the same as the defendant charged in the indictment.

Defendant asserts two arguments against removal here, in addition to his factual resistance on the identity issue. He claims that hearsay evidence may not be used to establish identity in a Rule 40 hearing. He also claims that because his true name is different than that of the defendant in the indictment that he may neither be removed or prosecuted, pursuant to the filed indictment. The court rejects both arguments as nonmeritorious.

### HEARSAY EVIDENCE

Prior to the presentation of evidence by defendant at the removal hearing, all proof of identity by the government came as hearsay from law enforcement officers. It consisted of hearsay evidence that the Federal Bureau of Investigation (FBI) had matched one of Mark Kenneth Foster's fingerprints to documentary evidence seized in Alabama, that now-convicted coconspirators had identified Mark Kenneth Foster as the Mark Whitehurst in the indictment, and that a number of now-convicted coconspirators had made identifications from photo-

graphic lineups, establishing the two men as one and the same person. The hearsay evidence, if properly admissible at a Rule 40 hearing, is overwhelmingly strong proof that Mark Kenneth Foster is the same man as the one named in the indictment.

Defendant makes an inferential argument that hearsay may not be utilized in a Rule 40 proceeding. He argues that the enabling legislation for the rules of evidence and criminal procedure at 18 U.S.C. § 3771, and the November 20, 1972 order of promulgation of the Federal Rules of Evidence (FRE) require that the FRE govern in a criminal proceeding. He then argues that FRCrP 4, which permits use of hearsay on issues of probable cause, and the Bail Reform Act, which permits use of hearsay on issues of detention, inferentially mean that hearsay is otherwise inadmissible. He also asserts that *United States ex rel. Kassin v. Mulligan*, 295 U.S. 396, 55 S.Ct. 781, 79 L.Ed. 1501 (1935), supports this proposition, although he cannot direct the court to any language in the opinion that so states. This elaborate reasoning stretches the authorities cited by defendant, lacks common sense, and is directly contrary to existing authority. *United States v. Johnson*, 45 F.R.D. 427, at 429 (D.Nev.1968), holding hearsay admissible at removal hearing. FRE 1101(d)(3). Accordingly, defendant's hearsay objections are overruled, and the hearsay evidence is admitted.

### SUFFICIENCY OF PROOF

*Johnson*, at 429, holds that hearsay proof of the photo identification of the defendant by a witness to the crime is sufficient for removal. Here, three coconspirators—Connie Ray Newell, David Nix, and Terry Markham, have made photo-lineup identifications of known photographs of Mark Kenneth Foster as the same man who participated with them in the marijuana and cocaine distribution enterprise described in the indictment. They specifically identified him as the "Swede", or "Mark Whitehurst" named in the indictment. Because coconspirator testimony alone may be sufficient for criminal conviction at trial, *Eg., United States v. Dorsey*, 819 F.2d 1055 (11th Cir.1987); *United States v. Hugh Chalmers Chevrolet-Toyota, Inc.*, 800 F.2d 737 (8th Cir.1986); and *United States v. Taylor*, 657 F.2d 92 (6th Cir.1981), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 723, 74 L.Ed.2d 950 (1982), defendant's arguments about the credibility of the coconspirators do not preclude consideration of their identifications. When considered with the totality of the proof of identification they are compelling.

Certain drug ledgers were seized from the Alabama home of coconspirator Watson in April, 1983. They consisted of 4–6 briefcases containing numerous notebooks, identified by conconspirators Bobby Williamson and Newell as drug ledgers. Agents' reviews of those ledgers establish that they contain numerous references to "Mark" and to "Swede." Defendant Mark Kenneth Foster's fingerprint was positively identified by the FBI as being present on a page of the 1981 ledgers. Agents' interviews with coconspirators in 1983–1984 resulted in consistent, independent oral statements that Foster was a member of the conspiracy alleged in the indictment. Such representations came from Williamson who stated that defendant used the names both Foster and Whitehurst; Newell, who described a splinter in the conspiracy from its origin in Tennessee and Alabama to Arizona, identifying Foster/Whitehurst as one-and-the same participant, and the role of 18–wheelers for loading and transporting drugs from a farm in Tennessee; and John Hart, who described defendant as one of the major traffickers in the conspiracy, who also assisted in building an 8,000 square foot log home on the Tennessee farm which was, for awhile, the distribution point for marijuana; and Terry Markham, an Arizona coconspirator, who described her continuation of the drug distribution from Arizona. Markham told agents that Foster continued his drug deal-

ing business with her, as part of the same organization, into mid–1986, that he lived in Minnesota, that he knew he had been indicted in Alabama under the name Whitehurst, and that it would be difficult to apprehend him because he never used his true name. Markham distributed drugs to Foster from Tucson. Foster's Minnesota phone numbers appear in her telephone book, seized by the authorities, and countless pages of her drug ledgers refer to distributions made to him.

This proof, is strongly corroborated by proof elicited on cross-examination of defendant's witnesses. Defendant's father and his present friends and business associates confirm that defendant resided in Tennessee during the period covered by the indictment, that defendant was engaged in the construction of a very large log home in Tennessee at the time, and that defendant travelled to Tennessee and Arizona quite regularly, often alone, for several days at a time.

With all of this, there is more than enough evidence of identity to require defendant's removal to Alabama. If he chooses to make a further issue of identity, he has every opportunity to do so at trial.

## NAMING IN INDICTMENT

■ Because the indictment does not specifically name Mark Kenneth Foster, defendant contends that he may neither be prosecuted nor removed, under its authority. He bases his argument on *Ex Parte Baine*, 121 U.S. 1 (1887). The case stands for the holding that only the grand jury may amend a federal indictment, and errors in the identification of the accused, the dates of offense, or the like, may not be corrected by judicial or prosecutorial amendment. That is indeed the law pertaining to amendment of federal indictments. *United States v. McMahan*, 744 F.2d 647 (8th Cir.1984).

■ Defendant then, however, bootstraps a series of state-law decisions into his argument, to conclude that a federal defendant may not be prosecuted under an indictment which sets forth a name other than his true name. Whether this argument is meritorious at all is a matter for the trial court in the Northern District of Alabama. Once the proceedings resume in that district, the prosecutors may consider whether to submit the matter to the grand jury once again, now that the defendant's true identity is discovered, and, if not, the trial court will no doubt be presented with the dismissal question. Those issues are not for the removal court. *Fetters v. United States*, 283 U.S. 638, 51 S.Ct. 596, 75 L.Ed. 1321 (1931); *United States v. Green*, 499 F.2d 538 (D.C.Cir.1974); and *United States v. Canada*, 440 F.Supp. 22 (N.D.Ill. 1977). Accordingly, this court will not entertain his request for dismissal of the indictment.

■ In addition, defendant's argument that this "defect" in the indictment bars removal should be rejected. When a removal court concludes on the evidence before it that the arrestee is one and the same as the person named in the indictment, it would frustrate the purposes of the removal rule, as well as the interests of justice, to deny removal on such grounds; it would provide too ready an avenue for those inclined to operate under an alias, for the avoidance of prosecution on the merits.

Accordingly, defendant will be ordered removed to the Northern District of Alabama.

## II. DETENTION

■ The United States Attorney for the District of Minnesota has made a written motion for detention without bond in this matter. Issuance of such an order is to be a last resort, under the Bail Reform Act, and may occur only after clear and convincing proof demonstrates that no condition, or combination of conditions of release, will reasonably assure the defendant's appearance in court and the safety of the commu-

nity. *United States v. Orta,* 760 F.2d 887 (8th Cir.1985). Under this standard, either dangerousness or risk of flight is a sufficient basis for detention. *United States v. Sazenski,* 806 F.2d 846 (8th Cir.1986). Here, the government has clearly and convincingly offered such proof, and an order of detention will issue.

## FINDINGS OF FACT

Defendant is the same person identified as Mark Whitehurst and "Swede" in the indictment pending in the Northern District of Alabama under # 85P785. It has been pending for approximately two years. Defendant was first arrested on the indictment on June 29, 1987. He is charged in five separate counts with conspiracy and substantive offenses involving distribution of cocaine and marijuana. The indictment alleges possession by him of about 80,000 pounds of marijuana. The majority of the defendants in the indictment have been convicted. The main defendant, named Garmony, received a sentence of life, with no parole; defendant Gibbs received a sentence of 33 years imprisonment. Several defendants who pleaded guilty pursuant to negotiation received terms of 15 years imprisonment.

The so-called Garmony organization distributed marijuana and cocaine in multiple areas, including Alabama, Tennessee, and Arizona, in a sophisticated network comprising a hierarchy of traffickers. Codefendants who have been convicted and have since cooperated with the authorities describe defendant as a second-echelon member of the conspiracy, who distributed staggering quantities of marijuana from a farmhouse in Tennessee, where 18–wheeler semi-trailers were loaded for distribution. Defendant at the time resided in Tennessee, and assisted in building an 8,000 square foot log home on the subject farmland.

Cooperating coconspirators state that when a faction of the organization transferred its operation to Tucson, Arizona, that defendant began distributing drugs from that location also. Drug notations seized from both the Alabama-Tennessee and Arizona locations, show, according to coconspirators, hundreds of thousands of pounds of marijuana, as well as cocaine, methaqualone, and quaaludes, to be consigned to defendant for distribution. The ledgers show the continuation of defendant's distribution into mid–1986, with sums in excess of $2 million/year paid by him for the purchase of drugs from Terry Markham. Defendant's fingerprint has been positively identified by the FBI on a page of the Alabama-Tennessee records.

Defendant was born as Mark Kenneth Foster in Minneapolis, Minnesota, in May, 1951. He resided in Tennessee during the time of the offenses charged, and resided there for 4–5 years. He still owns a residence in Tennessee, and periodically travels there for trips lasting several days. He presently resides in Scandia, Minnesota in a home nominally owned by his father, but paid for by himself. He also has unimproved real estate at an unknown location in Northern Minnesota.

Defendant owns Foster Construction, a contracting firm engaged in the framing of new single, family dwellings. The company is demonstrated, by the evidence, to have framed no more than 3–5 such residences per year. In 1986, defendant travelled to Arizona with the stated purpose of starting a mini-storage business venture, in the same location as the Arizona faction of the drug-dealing organization under indictment. Internal Revenue agents investigating defendant, after diligent search, have found no tax returns filed by defendant and no reported income from any legitimate source.

During execution of a search warrant at defendant's Scandia residence in October, 1986, drug notations exactly paralleling those seized in Arizona were found, along with a .380 caliber semi-automatic pistol, and small quantities of four types of controlled substances. Defendant was con-

victed in June, 1987, in State Court for possession of marijuana, and is presently on unsupervised probation until June, 1988.

During his time in Tennessee and Alabama, defendant used the name Mark Whitehurst, and was also nicknamed Swede and T–Bone. The drug ledgers used by the organization used code names. Defendant told coconspirator Markham that it would be difficult to apprehend him on the Alabama indictment due to his use of aliases.

## DISCUSSION

■ Preliminarily, there is the issue whether a removal court may properly issue an order of detention, upon a motion by the prosecutor in the arresting district. Rule 40(f) suggests, but does not require that the removal court follow the bond noted on the arrest warrant. It does require, that if departure is made from that sum, that the removing court provide written reasons. With the fresh investigative product of defendant's whereabouts and identity centering in Minnesota, including much of the information relevant to bail, it is appropriate for the prosecutor in the arresting district to move under 18 U.S.C. § 3142(e). Compliance with the required procedure under the Act inures to no one's detriment, even though the prosecution will occur in another district. If a detention order is warranted, setting bond until the detention issue could be heard in the receiving jurisdiction would be futile.

The detention provisions of the Bail Reform Act were spirited in large part by the problems encountered in getting major drug defendants to trial, recognizing that the forfeiture of large cash bonds is merely one of the costs of the drug business. This category of criminal defendants presents an especial risk of both flight and dangerousness. *United States v. Portes,* 786 F.2d 758, at 765 (7th Cir.1986); and *United States v. Martir,* 782 F.2d 1141, at 1144 (2nd Cir.1986). The dangerousness of major drug dealing, especially through an established network, is recognized. *Sazen-*

*ski,* at 848, and *United States v. Fortna,* 769 F.2d 243 (5th Cir.1985).

■ Here, at least at the time of the indictment, defendant was a major distributor of controlled substances. For bail purposes, however, it is more important to determine whether his major trafficking was confined to a period of more than seven years ago. The evidence here is that he continued major importation of marijuana into Minnesota well into 1986, and controlled substances were found in his home late in 1986. Defendant's widespread real estate holdings, including residence in several states, and the inferential cumulation of staggering earnings from relatively recent drug dealing, place him in the category of persons intended to be covered by the no-bail presumption. 18 U.S.C. § 3142(e). The combination of an available multi-state network, large sums of available funds, and numerous places in which to conceal himself, create a clear risk of flight, which is separate from that of the dangerousness of ongoing drug trafficking.

Defendant's success in avoiding arrest since the issuance of the 1985 indictment, through the use of aliases when trafficking, and property ownership through his father as a straw man, speak also to his risk of flight. See, *Sazenski,* at 847–848 (use of false names during commission of drug offense as factor in upholding detention order).

The government's case, corroborated by documents, and buttressed by testimony of those who participated in the alleged trafficking, appears strong. Judging from the sentences of codefendants, this is viewed as a serious case by the Northern District of Alabama, and defendant, since his arrest, faces very real and serious consequences.

All of the above substantially outweighs defendant's showing of court appearances during the minor criminal proceeding in State Court, and his community and family ties.

Based upon the foregoing, the briefs and arguments of counsel, and all the files and proceedings herein, the court concludes that no condition or combination of conditions of bond will reasonably assure the defendant's appearance or the safety of the community.

Therefore, IT IS HEREBY ORDERED that:

1. Mark Kenneth Foster be removed from the District of Minnesota to the Northern District of Alabama, pursuant to FRCrP 40(a);

2. The motion of the United States for detention without bond is GRANTED;

3. Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

4. Defendant shall be afforded reasonable opportunity to consult privately with his lawyer;

5. Upon order of the court or request by the United States Attorney, the person in charge of the corrections facility in which the defendant is confined shall deliver him to the United States Marshal for the purpose of appearance in connection with a court proceeding;

6. In connection with paragraph No. 1 hereof, the United States Marshal shall transport defendant, in custody, to the Northern District of Alabama.