United States Court of Appeals,

Eleventh Circuit.

No. 96-3637.

B.R.L. EQUIPMENT RENTALS LTD., a Canadian Corporation, Yvonne Chadwick, an individual, B.M.R. Golf International, a Canadian Corporation, Plaintiffs-Appellants,

v.

SEABRING MARINE INDUSTRIES, INC., a Florida Corporation, Defendant-Appellee.

Feb. 23, 1999.

Appeal from the United States District Court for the Middle District of Florida. (No. 92-2014-CIV-T-25B), Henry L. Adams, Jr., Judge.

Before HATCHETT, Chief Judge, and TJOFLAT and COX, Circuit Judges.

TJOFLAT, Circuit Judge:

In the summer of 1992, Bridge Bay Marina, a marina and boat retailer in Kelowna, British Columbia, acquired eleven luxury boats from Seabring Marine Industries in Archer, Florida. The boats were purchased by Bridge Bay using company checks. Each check was returned for insufficient funds. When Seabring's Vice President of Operations learned in late July that the checks had not been honored, he immediately contacted a regional sales representative, who met with representatives of Bridge Bay. Bridge Bay advised the representative of its financial difficulties, and attempted to persuade Seabring that it would soon receive payment. Seabring, understandably skeptical, immediately repossessed four of the boats and instructed Bridge Bay not to sell any of the others.

Unbeknownst to Seabring, Bridge Bay had already sold two of the other boats; a third one was sold two weeks later. The purchasers—appellants B.R.L. Equipment Rentals Ltd., Yvonne Chadwick, and B.M.R. Golf International—stored their boats at Bridge Bay's marina.

By December, Seabring had still not received payment from Bridge Bay, and again sent representatives to British Columbia to discuss the matter. At this meeting, Bridge Bay informed Seabring that it had no intention of paying for the boats or returning them. In response, Seabring covertly repossessed the remaining seven boats that evening, including the boats purchased by the appellants.

These three purchasers thereafter brought suit against Seabring for conversion (or, in the alternative, a writ of replevin) in the United States District Court for the Middle District of Florida. After extensive discovery, both the plaintiffs and the defendant filed motions for summary judgment. Seabring's motion was granted; the plaintiffs' motions were denied.

The district court had previously determined that the law of British Columbia governed the suit. In its order granting Seabring's motion for summary judgment, the court noted that Section 26 of the British Columbia Sale of Goods Act states that "where goods are sold by a person who is not the owner of them, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had." R.S.B.C., ch. 410, § 26 (1996). The district court then explained that Section 58 of the Act creates an exception to this rule for a "mercantile agent": A disposition of goods made by a mercantile agent, who is acting in the ordinary course of business and possesses the goods with the consent of their owner, is binding on the owner regardless of whether the owner has actually authorized the disposition. *See* R.S.B.C., ch. 410, § 58 (1996). The court, however, held that Bridge Bay was not Seabring's mercantile agent,

and therefore the exception found in Section 58 was inapplicable. Consequently, the general rule of Section 26 applied and the plaintiff's title to the boats was no better than that of Bridge Bay.[1]

We review a district court's grant of summary judgment *de novo*. *See City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 556 (11th Cir.1998). Our review of this case convinces us that the district court erred in its legal analysis and that, under a proper analysis, genuine issues of material fact exist that require us to remand the case for further proceedings. *See* Fed.R.Civ.P. 56(c) (stating that summary judgment is appropriate only when "there is no genuine issue as to any material fact").

Whenever a seller allows a buyer to use a check to purchase an item, regardless of whether the item is a luxury boat or an egg salad sandwich, that seller is extending credit to the buyer—the seller tenders the item in exchange for the buyer's written promise of payment at a future date. The extension of credit always entails the risk that the buyer will be unable to pay. For this reason, sellers have developed a variety of ways to minimize the risk they face in accepting checks—asking for identification, using a verification service, exacting stiff penalties for returned checks, requiring a cashier's or certified check, or simply refusing to deliver the property until the check has been honored. In addition, a seller may insure against a credit risk by taking a security interest in the property sold on credit.

In this case, Seabring, either through negligence or the taking of a calculated risk, did not take adequate precautions to protect itself against the risk of Bridge Bay's nonpayment. Seabring failed, for instance, to require a certified check or to take a security interest in the boats. Seabring's

---

[1]The district court did not discuss the quality of Bridge Bay's title, but presumably concluded that it was something less than good title. As discussed *infra,* the district court was correct—the title held by Bridge Bay was voidable title.

3

lack of precautions is no excuse for Bridge Bay's fraud, but it is a justification for refusing to allow Seabring to repossess the property from an innocent third-party purchaser. The situation is exactly as if Seabring had given the boats to Bridge Bay in exchange for a 90-day note, a note that Bridge Bay had no intention of honoring when drafted and that Bridge Bay in fact failed to honor when due. The remedy in such a situation would be clear: Seabring would have a cause of action against Bridge Bay for the value of the note—or possibly even a claim against Bridge Bay for replevin or conversion of the boats (if the boats were still in Bridge Bay's possession)—but would not have a claim against a third party that purchased the boats from Bridge Bay.

The law expresses these ideas through the notion that the possessor of property obtained via a worthless check has "voidable" title to the property—the possessor has title, but the seller can avoid that title as against the buyer upon discovery of the fraud. *See Regency Auto Invs. Inc., v. Doe* [1997] No. SO41698 (B.C.Sup.Ct. November 4, 1997). In other words, the fact that the title is voidable means that the equitable remedy of recission is available to the seller, whereas in an ordinary breach of contract situation the only remedy available to the seller is damages. *See Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.,* 14 F.3d 1507, 1518 (11th Cir.1994) (stating that equitable remedies are ordinarily available only if there is no adequate remedy at law).

Because Bridge Bay had voidable title to the boats, Section 26 of the British Columbia Sale of Goods Act, upon which the district court relied, is inapplicable. That section applies to sales "by a person who is not the owner," R.S.B.C., ch. 410, § 26 (1996); in this case, Bridge Bay *was* the owner of the boats. The district court therefore misapplied the law to the facts, and consequently we conclude that it erred in granting Seabring's motion for summary judgment on the basis of Section 26.

4

Having decided that the district court's analysis was in error, we turn to the question of whether there is any other analysis under which we can sustain the district court's ruling. *See Bonanni Ship Supply, Inc. v. United States,* 959 F.2d 1558, 1561 (11th Cir.1992) (noting that "this court may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court" and affirming grant of summary judgment on alternative ground). We conclude that there is not.

The applicable provision of the British Columbia Sale of Goods Act in this case is Section 28, which reads:

> When the seller of goods has a voidable title to them, but his title has not been avoided at the time of sale, the buyer acquires a good title to the goods, if he buys them in good faith and without notice of the seller's defect of title.

R.S.B.C. ch. 410, § 28 (1996). Seabring contends that Bridge Bay's title had been avoided at the time of sale. There do not appear to be any British Columbian cases addressing the question of what constitutes avoidance of a voidable title; indeed, there appears to be very little case law anywhere on the topic. However, because voidable title is exactly the same as ordinary title—with the exception of the remedies available to the transferor of that title—voidable title can presumably be avoided in the same ways in which ordinary title can be passed, namely, through voluntary relinquishment, legal action, or repossession. There is no indication that Bridge Bay voluntarily agreed to return the boats to Seabring; on the contrary, Bridge Bay communicated to Seabring that it had no intention of ever returning the boats. Seabring never brought a legal action against Bridge Bay, and it did not repossess the boats until after the boats had been sold. Consequently, Seabring had not avoided the voidable title held by Bridge Bay at the time of sale.

5

Seabring also contends, in its answer, that the appellants had either actual or constructive notice of Bridge Bay's defect of title. This is a factual question to be determined by the district court. If the appellants did have such notice, then they had "unclean hands" under the statute and had only voidable title as against Seabring. If, however, the appellants had no notice of Bridge Bay's title defect, then the appellants acquired good title to the boats and Seabring had no more right to repossess them from Bridge Bay's marina than they had to repossess the appellants' cars from their own driveways.

For the foregoing reasons, the district court's grant of summary judgment for Seabring is REVERSED, the district court's denials of appellants' motions for summary judgment are AFFIRMED, and the case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED.

COX, Circuit Judge, specially concurring:

I join Judge Tjoflat's opinion for the court except for the two consecutive paragraphs that conclude the acceptance of checks is an extension of credit. The first of these paragraphs begins: "Whenever a seller," etc. I concur in the judgment.